No. 26,600.

Edward C. Michael et al., *Appellants*, v. The Jacob Dold Packing Company, *Appellee.*

SYLLABUS BY THE COURT.

1. Workmen's Compensation — *Partial Dependency Construed.* Where a workman living with his parents turns his wages over to them, and the family is supported by his wages and the wages of his father, the parents are to be regarded as dependent in part upon him, but not as wholly dependent, within those terms as used in the workmen's compensation act, although his entire earnings, with those of his father, are required for the support of the family.

2. Same—*Partial Dependency—Amount of Recovery.* The provision of the workmen's compensation act that where a workman dies as the result of a compensable injury leaving no person wholly dependent upon him, but several who are partly so, the employer shall pay them such part of the amount they would have received if they had been wholly dependent as is proportionate to their degree of dependency, means that they are to receive such a proportion of what they would have been paid if wholly dependent as the amount contributed by the decedent to their support bears to the total sum expended for that purpose.

3. Same—*Partial Dependency—Amount of Contribution—Evidence.* Upon the evidence findings of the amount of a workman's contribution to the support of his parents and of the amount of his average annual earnings are held to have been erroneous.

4. Same—*Lump-sum Verdict—Discretion of Trial Court.* The refusal of the trial court to render judgment in a lump sum is held not to show an abuse of discretion.

Appeal from Sedgwick district court, division No. 1; Thomas E. Elcock, judge. Opinion filed April 10, 1926. Modified.

*E. L. Foulke, James B. Nash* and *Roy H. Wasson,* all of Wichita, for the appellants.

*Paul J. Wall, Allen B. Burch* and *Roger P. Almond,* all of Wichita, for the appellee.

---

Workmen's Compensation Acts, C. J. pp. 62 n. 84, 100 n. 73, 102 n. 90, 127 n. 95; 13 A. L. R. 686; 30 A. L. R. 1258; 35 A. L. R. 1070; 39 A. L. R. 314; 28 R. C. L. 771.

The opinion of the court was delivered by

Mason, J.:   Frank Michael died as the result of an injury after being for about four and a half months in the employ of the Jacob Dold Packing Company.   The circumstances were such as to make the company liable under the workmen's compensation act.   His parents brought this action against it.   A verdict was returned for $3,032.50.   The jury in answer to special questions found that during his employment the average weekly contribution of the decedent to the plaintiffs was $13.80; that the average weekly wages of his father were $15.80; that the weekly cost of maintaining the family was the sum of these amounts, or $29.60; and that the average yearly earnings of the decedent, as the phrase is used in the statute, were $821.60.   Upon these specific findings judgment was rendered for $1,149.07, payable in weekly installments.   The plaintiffs appeal, asking the full amount of the verdict.

The more important questions presented involve the construction of the statute as to the general rule by which the amount to be paid to the plaintiffs under such circumstances is governed.   Other questions to be determined relate to the correctness of the items which are specifically found, and upon which the amount to be allowed turns.   We will assume for the time being that the amounts named in the special findings are correct.   The theory adopted by the trial court is that the plaintiffs were partially dependent on the decedent, and are entitled to that proportion of what they would receive if they had been wholly dependent which his contribution to their support bears to their total income, of which it formed a part.   The plaintiffs' theory is that they were wholly dependent, because they required the whole of the decedent's wages for their support, and therefore should receive three times the amount of his average yearly earnings.   The statute to be interpreted reads:

". . . 2. *Where death results from injury.* (*a*) If a workman leaves any dependents wholly dependent upon his earnings, a sum equal to three times his average yearly earnings, computed as provided in section 4 of this act, but not exceeding thirty-eight hundred dollars ($3,800) and not less than fourteen hundred dollars ($1,400) . . . (*b*) If a workman does not leave any such dependents, but leaves dependents in part dependent on his earnings, such proportion of the amount payable under the provisions of paragraph 2 (*a*) of this section as may be agreed upon or determined to be proportionate to the degree of dependency of the said dependents. . . . Where disability, partial

in character but permanent in quality, results from the injury, the injured workman shall be entitled to the compensation provided in paragraph 1 of this section [*i. e.*, the cost of medical treatment, etc.], but shall not be entitled to any other or further compensation for or during the first week following the injury. Thereafter, compensation in a lump sum shall be paid as provided in the following schedule, the average weekly wages to be computed as provided in section 4 of this act, and the compensation to be in no case less than $6 per week nor more than $12 per week. . . ." (R. S. 44-510.)

1. We think within the meaning of the language quoted a person is to be regarded as wholly dependent upon a workman when his support is derived wholly from the workman's wages, and is partly dependent upon him when his support is derived in part from that source and in part from some other. The circumstance that all the workman's wages, together with money they obtain elsewhere, are used for his parents' support does not in our judgment create a condition of total dependency on their part. This court has already said:

"A surviving spouse may be wholly dependent, or may have employment, or a separate income, or be living apart from the workman, so as to be only partially dependent, or not dependent at all, and these things might be true of a child, or of any other person named in the statute. Hence, the dependency of any individual 'member of the family' of the deceased workman is either wholly or partial (R. S. 44-510). Wholly dependent, means full, complete dependence, that the individual has no consequential source or means of maintenance other than the earnings of the workman. Partial dependence may vary in degree from wholly dependent on the one hand to wholly independent on the other; and may apply to any individual 'member of the family' of the workman, who has some substantial source of maintenance other than the wages of the workman." (*McCormick et al. v. Coal & Coke Co.*, 117 Kan. 686, 690, 232 Pac. 1071.)

2. We also think the provision that partial dependents shall receive such proportion of three times the deceased workman's average yearly earnings as is "proportionate to the degree of dependency of the said dependents" means that the amount allowed them shall bear the same relation to the amount referred to (which they would have been entitled to if they had been totally dependent) as the amount actually received from the workman bears to their entire income from all sources. That is the interpretation placed upon the corresponding clause in a Georgia statute reading: "If the employee leaves only dependents partly dependent upon his earnings for support at the time of the injury, the weekly compensation to be paid as aforesaid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount

Michael v. Jacob Dold Packing Co.

contributed by the employee to such partial dependents bears to total dependency at the time of the injury." (*Ætna Life Ins. Co. v. Smith,* 29 Ga. App. 628, 629.)

The plaintiffs rely for support of their view upon *Fennimore v. Coal Co.,* 100 Kan. 372, 164 Pac. 265. There under the statute as it existed prior to 1917 the parents of a deceased workman who were partially dependent upon him, receiving $25 a month from him, being half his wages, were given a judgment for $900, or three times the annual amount they had received from him. The statute at that time, however, contained the word "injured," in place of the phrase "degree of dependency." Where the statute then said partial dependents were to receive such proportion of what they would get in case of total dependency as would be "proportionate to the *injury* to the said dependents," it now says "proportionate to the degree of dependency of said dependents." The plaintiffs urge that no substantial change was intended by the legislature in making this substitution. To us the contrary seems clear. It is true the amended statute became effective March 13, 1917, so that the amendment could not have been made in consequence of the decision of this court in the Fennimore case, which was rendered about a month later. But it is quite possible that the judgment to the same effect made in January, 1916, by the district court of Crawford county, from which the appeal was taken, may have attracted attention to the subject and so been a factor in the change.

The plaintiffs also cite *In re Peters,* 65 Ind. App. 174, and other decisions by the same court. The statute there considered, however, read as follows:

"If the employee leaves dependents only partially dependent upon his earnings for support at the time of the injury, the weekly compensation to those dependents shall, in addition to burial expenses, not to exceed one hundred dollars, be in the same proportion to the weekly compensation for persons wholly dependent as the amount contributed by the deceased employee to such partial dependent bears to his annual earnings at the time of the injury." (Indiana Acts, 1915, ch. 106, § 37, p. 402.)

3. It remains to consider the correctness of the special findings which were factors in determining the amount of the judgment. It seems clear that the jury based their finding of the average weekly contribution of the decedent to the plaintiffs during his employment —$13.80—upon the hourly wage scale—39½ cents—and the estimated time he worked, making a deduction of $2 a week as the amount of wages he did not turn over to his parents. The defend-

ant's evidence showed the exact amount of money paid him and a close approximation of the time he worked, showing an average weekly payment of substantially $17.66. The testimony of the parents justifies the deduction of no more than $1.50 a week from this, making a weekly average of $16.16, instead of $13.80, contributed to the support of the plaintiffs.

The statute provides that for its purposes the average annual earnings of a workman who has been for less than a year in the employment in which he was injured shall be computed by taking "fifty-two times the average weekly amount which, during the twelve months immediately preceding the accident, was being earned by a person of the same grade employed at the same work by the same employer, undiminished by loss due to absence from work on account of illness or other unavoidable cause." (R. S. 44-511.) The jury's finding that the average yearly earnings of the plaintiff's son were $821.60 was obviously based upon a forty-hour week at a wage of 39½ cents per hour. There was evidence that the defendant guaranteed its employees work each week for five days of eight hours each. It was not definitely shown how many hours a week they actually worked. The decedent was shown by the company's books to have drawn pay in one instance for as much as $19.95 a week. The plaintiffs said he had received as high as $22.

In *McKinstry v. Coal Co.*, 116 Kan. 192, 225 Pac. 743, the court said:

"There was evidence which tended to show that neither this mine nor any of the others in its vicinity operated full time. When the mine in which the plaintiff worked was not in operation, he did not earn wages, but his compensation should not be reduced because the mine did not run full time. His compensation should be calculated for the period fixed by law, at the rate fixed by law, whether the mine was operated all the time or only part of the time. At $6 a day, he would earn $36 in a week of six working days, and if the mine ran full time, he would earn $1,872 in a year. Sixty per cent of $36 would be $21.60, or more than the maximum amount allowed by law." (p. 194.)

Applying the same principle to the situation here presented we think the average annual wages should have been computed upon a basis of six days a week. However, until April 15, 1923, the scale was 34½ cents an hour, instead of 39½. A revision of the computation in accordance with these suggestions gives, according to the plaintiffs' figures, $928.56, which is at least substantially correct, and which should be substituted for the $821.60 found by the jury.

4. The plaintiffs ask that the judgment be made payable in a

lump sum instead of by installments. This matter is committed by statute to the discretion of the trial court (R. S. 44-534), and we find no grounds for saying its discretion was abused.

The judgment is directed to be modified by applying the same method of computation as before, after increasing the item of $13.80 to $16.16 and the item of $821.60 to $928.56.