No. 33,762

Samuel E. Baker and Nora Baker, Parents of Robert Edward Baker, Deceased, *Appellants,* v. Western Power and Light Company and American Employers Insurance Company, *Appellees.*

(78 P. 2d 36)

Opinion filed April 9, 1938.

*J. S. Simmons, Alva L. Fenn* and *Herbert E. Ramsey,* all of Hutchinson, for the appellants.

*Allen B. Burch, A. W. Geiger, Dan B. Cowie* and *Henry E. Martz,* all of Wichita, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was a workmen's compensation case in which the parents of the deceased son are the claimants as dependents, and the employer, for whom the son was working when he was killed by accident, and the insurance carrier are the respondents. A claim for compensation was duly filed with the commissioner of workmen's compensation, and after a hearing before the commissioner an award was made of $1,367.42 based on a finding of partial dependency. From this award and finding both parties appealed to the district court of Sumner county, where the finding and award was affirmed, from which decision the claimants have appealed to this court.

Three questions of law are involved: (1) Were the claimants actual dependents of the deceased; (2) if they were dependents, were they partial or total dependents; and (3) what was the proper basis upon which the compensation should have been computed? A stipulation covered the usual and vital parts to make it a compensation case, if the parents are dependents. The funeral and kindred expenses were assumed by the defendants.

Robert Edward Baker, the deceased, was a bachelor, 26 years of age at the time of his death, and was at that time in the employ of the respondent, the Western Light and Power Corporation, at Wellington, where he met his death by accident on August 27, 1935.

His first earnings were with his parents when living on a ranch near Arlington. He and the family moved from the ranch to Arlington on March 8, 1934, and remained there until July 4, 1934. While there he earned $88, which was used for the support of his father's family, including himself.

He and the family moved to Hutchinson on July 4, 1934, and on July 20, 1934, he commenced to work for the respondent at Hutchinson and continued to work there in the employ of the respondent until January 1, 1935. A statement of the wages earned by him during that time makes a total of $332.53. He lived with his father's family while at Hutchinson, and substantially all his earnings while there were used in the support of the family. On January 14, 1935, he commenced work for the respondent at Wellington at the stipulated wage of fifty cents per hour in a class of employment that usually worked forty hours per week. A statement of the company was introduced in evidence showing the semimonthly payments made to him from January 14, 1935, to the date of his death, August 27, 1935, in the total sum of $677.50. This was a higher rate of wages during this last portion of his work for the respondent at Wellington and quite a little higher than that paid him while he was working at Hutchinson, but the commission and the court found the earnings of the deceased for the last year to be $1,040, and for the year preceding $25 per month for six months, or $150, which he had earned on the ranch, together with room and board, estimated by the witnesses to be $3.50 per week, or $91, making a total at the ranch of $241. To this the commissioner added the $88 the deceased earned at Arlington, making a total of $329 for the first year's earnings, which added to $1,040, the possible earnings for the last year at fifty cents per hour and forty hours per week, made a total of $1,369, earnings for the two years, or an average annual earning of $684.50.

As to the proper basis upon which compensation for dependents should be computed, if any is allowed, it is urged by the claimants that the plan used was different from that prescribed by statute and that six days per week should have been counted instead of five, thus making $24 per week earning, instead of $20 as allowed by the commissioner and approved by the court, or $1,248 per year and for three years would have been $3,744 instead of $3,120. This goes back to something that involves quite largely a question of fact which this court cannot consider. As stated above in connection

with exhibit A, which showed the earnings of the deceased from January 14, 1935, to August 27, 1935, there was a statement that the rate of compensation was fifty cents per hour and that men in similar classes of employment usually worked forty hours per week. This in itself, by actual calculation, showed a little more than forty hours per week. As modifying this statement of forty hours per week there was introduced exhibit B, which was a calendar kept by the deceased, and upon which was shown the days that he worked during this last period of seven and a half months and the hours which he worked each day. Most of the days showed eight hours per day, but some as low as four. It also showed from five to eleven days each month on which he did not work at all.

Now the claimants contend that the commissioner erred by basing the rate on forty hours per week, or five days a week instead of six, as they contend the statute under the circumstances requires. The following is the portion of the statute which is involved in this particular matter, being a part of G. S. 1935, 44-511:

". . . Where the rate of wages is fixed by the hour the daily wage shall be found by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the character of work involved. In any case the weekly wage shall be found by multiplying the daily wage by five or if the employee worked a greater proportion of the week regularly, then by five and one half, six, six and one half, or seven, according to the customary number of working days constituting an ordinary week in the character of work involved. Five days shall constitute a minimum week."

Claimants refer not only to the statute but to a number of decisions, among which are *Cramer v. Railways Co.*, 112 Kan. 298, 211 Pac. 118; *McKinstry v. Coal Co.*, 116 Kan. 192, 225 Pac. 743; *Burgin v. Western Coal & M. Co.*, 135 Kan. 330, 10 P. 2d 908; and *Miles v. Wyatt*, 138 Kan. 863, 28 P. 2d 748, all of which, however, were constructions and interpretations of the former statute prior to the one now in force, which was enacted at the special session of 1933 and is chapter 74 of the laws of that special session. The old law did not contain in general or in similar terms the portion of the statute, above quoted, as to the calculation of daily and weekly wages paid to the workman, so although both exhibits A and B may show something more than forty hours per week that the deceased had worked during the last seven and a half months, there is nothing to show "the customary number of working hours constituting an ordinary day in the character of work involved" was more than that stated in exhibit A, or forty hours per week for the class of

workmen of which the deceased was one. For instance, one of the cases cited held where a mine was closed part of the time without the fault of the workman, while he received no wages for such time, that part was not deducted from the whole general time in computing the compensation in case of his injury or death.

We are not able to say solely as a matter of law that this computation should have been based on six days a week instead of five days or forty hours per week. It also appears as if it might partially have depended upon the difference in testimony which this court cannot consider in this character of a case. The showing, at most, was concerning the work done by the deceased as being more than five days or forty hours per week, but the statute bases the computation upon the customary number of working hours constituting an ordinary day in the character of the work involved. No showing along the line of customary number of hours constituting an ordinary day or week appears in the record except the reference to forty hours per week as contained in exhibit A as being the usual number per week in similar class of employment. The commission applied the provisions of G. S. 1935, 44-510 (2), to ascertain the amount to be paid dependents, the essential portion of which is as follows:

"(a) If a workman leaves any dependents wholly dependent upon his earnings, a sum equal to three times his average yearly earnings, computed as provided in section eleven (11) of this act . . . (b) If a workman does not leave any such dependents, but leaves dependents in part dependent on his earnings, such percentage of the sum provided in paragraph 2 (a) of this section as the average annual contributions which the deceased made to the support of such dependents during the two years preceding the injury bears to his average annual earnings during such two years."

By this method the amount for partial dependents was found by the commission to be $1,367.42. We approve the method followed.

As to the question of dependency, the claimants insist they are total dependents instead of partial as found by the commissioner and approved by the district court. As stated above, the deceased lived with his parents until he went to Wellington about seven and one half months before his death, during which time all of his earnings went to the support of the family, but after going to Wellington he on frequent visits purchased supplies for the family and paid some bills and furnished some clothing and shoes, averaging $25 or more per month.

The record shows that the father of the deceased was 56 years of age and the mother 45 years old when this claim was made for

compensation, that a daughter 20 years old and a son 15 years of age lived with the parents. The father had been out of regular work since he left the ranch, and one or two attempts failed in remuneration until he applied to the PWA for work, and he has been working for the PWA since November, 1934, at $3.20 per day part time and has been earning about $23 or $24 per month. Claimants insist that they are totally dependent, while the respondents claim that they are not dependents at all or at most only partial dependents. It is argued by the claimants that as this PWA employment is federal money advanced to the county for different work projects, and although it was put in the shape of a wage, it was nothing more or less than governmentally supervised charity, absolutely temporary, liable to be discontinued at any time, and therefore it was nothing more than direct relief.

Claimants cite the case of *McCormick et al. v. Coal & Coke Co.,* 117 Kan. 686, 232 Pac. 1071, which contains the following as to different kinds of dependencies:

"Wholly dependent, means full, complete dependence, that the individual has no consequential source or means of maintenance other than the earnings of the workman. Partial dependence may vary in degree from wholly dependent on the one hand to wholly independent on the other; and may apply to any individual 'member of the family' of the workman, who has some substantial source of maintenance other than the wages of the workman." (p. 690.)

The case just cited refers to G. S. 1935, 44-508 (j), where the words "dependents" and "family" are defined as follows:

"'Dependents' means such members of the workman's family as were wholly or in part dependent upon the workman at the time of the accident. 'Members of a family,' for the purpose of this act, means only legal widow or husband, as the case may be, and children; or if no widow, husband, or children, then parents or grandparents."

Claimants also cite 71 C. J. 531 as follows:

"It is generally held that one is not totally dependent where a substantial part of the support comes from another source; but courts will not deprive applicants of the rights accorded total dependents merely because of minor considerations or benefits which do not substantially affect or modify the status of the applicants toward the deceased employee."

Claimants quote from 1 Honnold on Workmen's Compensation, section 72, as follows:

"Persons are not precluded from being totally dependent by the fact that temporary gratuitous services have been rendered for or occasional money sent to them by persons other than the workman, that they hold small savings accounts. . . ."

Claimants also cite the following decisions on this subject from other states: *McKesson-Fuller-Morrison Co. v. Industrial Commission*, 212 Wis. 507, 250 N. W. 396; *Murphy v. Genesee County Road Com.*, 250 Mich. 457, 230 N. W. 937; *McLaughlin v. Road Commission*, 266 Mich. 73, 253 N. W. 221; *Peterson v. Industrial Acc. Com.*, 188 Cal. 15, 204 Pac. 390; *Blue Diamond Coal Co. v. Frazier*, 229 Ky. 450, 17 S. W. 2d 406; and *London G. & A. Co. Ltd. v. Indus. Acc. Com.*, 203 Cal. 12, 263 Pac. 196. They take a liberal view as to dependency. A woman with a bond producing an income of $62.50 per year was held to be totally dependent. A woman owning an unproductive farm of fifty acres, also a cow and fifty chickens, was held to be totally dependent. Another was where the son lived with his mother and younger brother and they had been getting help in the form of clothing, fuel and food from the county and Red Cross when he was out of work, and the mother was held to be totally dependent. Another case was declared to be one of total dependence where a bachelor son lived away from the home of his mother but sent her $40 or $50 a month and she in the summer earned $10 or $15 a month. Another held where one had some slight savings or was able to make something by his own labor that he might be wholly dependent. Another held that dependency does not mean absolute dependency for necessities of life but it is sufficient that contributions of employee are looked to for support and maintenance of dependent's accustomed mode of living.

The case of *Michael v. Jacob Dold Packing Co.*, 120 Kan. 684, 244 Pac. 1050, was where parents of a deceased son who lived with the family when he was accidentally killed were the claimants, and it was said in the opinion:

"We think within the meaning of the language quoted a person is to be regarded as wholly dependent upon a workman when his support is derived wholly from the workman's wages, and is partly dependent upon him when his support is derived in part from that source and in part from some other. The circumstance that all the workman's wages, together with money they obtain elsewhere, are used for his parent's support does not in our judgment create a condition of total dependency on their part." (p. 686.)

In the case of *Burgin v. Western Coal & M. Co.*, 132 Kan. 663, 296 Pac. 373, a judgment of total dependence was reversed, and it was held as a matter of law that the evidence did not show the mother was a total dependent of a workman, a son, who contributed to her support $25 or $30 a month when he was employed, while another son was earning $100 per month and contributed practically

nothing. In that case the mother stayed a short time with each of two daughters and earned something by her own work until the death of her son.

We think there was sufficient evidence to sustain the finding of the trial court and to be in harmony with the former rulings of this court as to the dependency as a matter of law, that the claimants in this case earned a substantial part of their living, even if it was earned under a federal relief measure, and they were therefore not totally dependent upon the earnings of the deceased son.

The respondent insists that because the deceased was not an actual member of the family of his parents at the time of his death that they do not come within the definition of a family. The case of *Tisdale v. Wilson & Co.*, 141 Kan. 885, 43 P. 2d 1064, treats of this matter where a wife had deserted and abandoned her husband a short time before the accident, and it was held not to be sufficient to exclude her from partial dependence.

As to the attempted cross-appeal by the respondent, the question was fully settled in the holding in the case of *Davis v. Phillips Petroleum Co.*, 137 Kan. 30, 19 P. 2d 733, where the question as to the time of taking the appeal was the same. It was there held:

"The supreme court does not have jurisdiction of a cross appeal in a workmen's compensation case where such appeal is not taken and perfected within twenty days after the rendition of judgment by the trial court on the compensation award." (Syl. ¶ 2.)

The judgment is affirmed.