CARNEGIE-ILLINOIS STEEL CORPORATION ET AL. *v.* MASON.

[No. 17,035. Filed November 10, 1942.]

*Knapp, Allen & Cushing,* of Chicago, Illinois, *White, Wright & Boleman,* of Indianapolis, and *Milo C. Murray,* of Gary (*Harlan L. Hackbert,* of Chicago, Illinois, of counsel), for appellants.

*Edgar J. Call* and *Kenneth Call,* both of Gary, for appellee.

FLANAGAN, C. J.—On September 11, 1941, Lincoln D. Mason died as the result of an accidental injury arising out of and in the course of his employment with appellant Carnegie-Illinois Steel Corporation, which occurred on September 7, 1941. Appellant Gertrude Mason, his mother, and appellee Addie Mason, claiming to be his wife, each sought an award for compensation by the Industrial Board. That board denied compensation to appellant Gertrude Mason and granted an award to appellee. Gertrude Mason and Carnegie-Illinois Steel Corporation have both appealed, assigning as error that the award of the full board is contrary to law.

The question presented is whether appellee was the common-law wife of the decedent at the time of his injury and death.

There is evidence to support the following facts:

Appellee was legally and ceremonially married to one Wyatt Berry in 1927. A short time later he left her and thereafter she did not hear from him except that during the same year she received a letter from a jailer in Clarksdale, Mississippi, informing her he was in jail, and in 1928 a boy who came from Clarksdale informed her that he was dead. In 1929 she met the decedent in Cairo, Illinois, and in 1930 they there entered into an oral marriage agreement and there lived together as husband and wife until November 24, 1932, when he was sent to prison. She considered they were divorced when he was sent to prison.

In February, 1941, he was released from prison, visited Cairo for a few days and then went to Gary, Indiana, to work. In August, 1941, the decedent sent for appellee and she went to Gary. On the night of her arrival, August 9, 1941, they entered into a new oral marriage agreement and lived together as husband and wife until he died. Several people testified that he introduced her to them on the evening of her arrival as his wife and told them they had just married. On the following Friday one of them gave a wedding dinner for appellee and decedent which was attended by a number of people.

The cashier and bookkeeper of the International Grocery Market at Gary testified that decedent opened an account there, brought in appellee and introduced her as his wife; that both of them signed a note and wage assignment; and that appellee bought groceries on the account from August, 1941, until after decedent's death, which he paid for as long as he was living.

An insurance salesman testified that he sold the decedent an accident and health insurance policy in August, 1941, in which appellee as decedent's wife was desig-

nated as beneficiary. The application bearing decedent's signature and the policy were introduced into evidence.

All the parties to this appeal agree that the marriage contract entered into between appellee and decedent in Illinois in 1930, was invalid under the laws of the State of Illinois.

Appellants contend that appellee was not competent to marry the decedent because she was not divorced from Wyatt Berry. However, if the marriage agreement of August, 1941, was valid, it occurred fourteen years after Berry disappeared. There is no evidence whatsoever that Berry was alive after 1927, but the only evidence is that he abandoned appellee in 1927 and has not been heard from since that year. More than seven years having elapsed since his disappearance the law raises a presumption that Wyatt Berry died prior to the time of the marriage of August, 1941. *Cooper* v. *Cooper* (1882), 86 Ind. 75; *Equitable, etc., Society* v. *James* (1920), 73 Ind. App. 186, 127 N. E. 11.

Appellants also contend that the purported marriage of August, 1941, could not be valid because the purported marriage in 1930 having been void under the laws of Illinois, the relationship of appellee and decedent was illicit in its origin and is to be presumed to continue to be of that character in the absence of evidence establishing an actual contract of marriage.

The illicit relationship was necessarily broken between November, 1932, and February, 1941, by reason of the fact that decedent was confined in prison. After his release he saw appellant during his visit in Cairo but according to the evidence had no relations with her then or at any time thereafter until after the new oral

marriage agreement in August, 1941. The evidence as we have hereinabove recited it is sufficient to sustain a finding that a common-law marriage was entered into in August, 1941. See *Norrell* v. *Norrell* (1942), 220 Ind. 398, 44 N. E. (2d) 97. That evidence, taken with the evidence of the voluntary as well as involuntary abandonment of the illicit relations, is sufficient to overcome the presumption of the continuance of such illicit relationship.

Award affirmed with statutory 5% increase.

NOTE.—Reported in 44 N. E. (2d) 524.