GUEVARA *v.* INLAND STEEL COMPANY ET AL.

[No. 17,876. Filed November 8, 1949. Rehearing denied December 15, 1949. Transfer denied January 20, 1950.]

Draper, C. J., concurs with opinion.

Royse, J., dissents with opinion.

*Harold J. Douthett,* of Hammond, and *Fischer, Bosgraf & Mackenzie; Leonard Bosgraf* and *Kellam Foster* (of counsel), all of Chicago, Illinois, for appellant.

*Dorsey, Travis & Tinkham,* of Hammond, and *Baker & Daniels,* of Indianapolis, for appellees.

WILTROUT, P. J.—This appeal challenges an award by the full Industrial Board denying compensation to the appellant. That part of the award necessary for an understanding of the issues raised here reads as follows:

> "That on the 8th day of June, 1948, plaintiffs' decedent Esiquio Guevara was in the employ of the defendant at an average weekly wage in excess of $36.50; that on said above mentioned date, the plaintiffs' decedent sustained an accidental injury arising out of and in the course of his employment with the defendant, from which said accidental injury he died the same day; that the said defendant had knowledge of said injury and death.
>
> "It is further found that at the time of the death of said Esiquio Guevara, he was living with Juana Guevara as his common law wife and with Guadalupe or Lupe Guevara, his daughter by a former marriage; both of said plaintiffs were wholly dependent on the said Esiquio Guevara at the time of his death for maintenance and support; that the said Juana Guevara, common law wife of Esiquio Guevara, at the time of his death, had not maintained such common law relationship in Indiana for five years as provided by the Indiana Workmen's Compensation Law."

Compensation was awarded to the decedent's child, but denied to his wife.

This appeal involves § 40-1403a, Burns' 1940 Replacement (1947 Supp.); Acts 1947, ch. 162, § 8, p. 523, which provides:

> "The following persons are conclusively presumed to be wholly dependent for support upon a deceased employee and shall constitute the class known as presumptive dependents in the preceding section:
>
> "(a) A wife upon a husband with whom she is living at the time of his death, or upon whom the laws of the state impose the obligation of her support at such time. The term 'wife' as used in this subsection shall exclude a common-law wife unless such common-law relationship shall have existed openly and notoriously for a period of not less than five (5) years immediately preceding the death."

Appellee Inland Steel Company, by its special answer to appellant's application for compensation, alleged that if appellant was the common-law wife of decedent, such common-law relationship did not exist openly and notoriously for a period of five years immediately preceding decedent's death. Evidence was presented on this issue.

The board found that appellant was the common-law wife of decedent but found that they had not maintained such common-law relationship *in Indiana* for five years. The board failed to make a finding as to whether or not such relationship existed for any time elsewhere than in Indiana, and if so, whether for the statutory period. The Workmen's Compensation Act does not require that such relationship shall have been maintained only in Indiana for the five year period. It is the duty of the Industrial Board to make a finding of fact on every issue pre-

sented to it. *Cole* v. *Sheehan Construction Company* (1944), 222 Ind. 274, 53 N. E. 2d 172; *Hayes Freight Lines* v. *Martin* (1948), 118 Ind. App. 139, 77 N. E. 2d 900.

The appellee Inland Steel Company in its application for a review by the full board, and by petition to the full board, asked the board to take judicial notice of certain Illinois statutes which declare that common-law marriages thereafter entered into are null and void.

From the evidence it appears that appellant and decedent first began living together in Illinois, and then moved to Indiana, where they continued to live until decedent's death. They had lived in Indiana over three, but less than five years when he was killed. The evidence was conflicting as to whether their relationship existed for more or less than five years from its inception in Illinois.

The principal question in this case is the interpretation of that part of the above-named statute which provides: "The term 'wife' as used in this subsection shall exclude a common-law wife unless such common-law relationship shall have existed openly and notoriously for a period of not less than five (5) years immediately preceding the death."

Underlying the Workmen's Compensation Act is the principle that the economic loss arising when an employee sustains accidental injury arising out of and in the course of his employment and from which he dies, ought to be borne by the industry involved and the consumers of its products rather than by the employee's dependents or society at large. *In re Duncan* (1920), 73 Ind. App. 270, 127 N. E. 289.

In construing the legislative intention a measure of liberality should be indulged in to the end that in

doubtful cases dependents may not be deprived of the benefits of the humane provisions of the Act. *Meek* v. *Julian* (1941), 219 Ind. 83, 36 N. E. 2d 854; *Public Service Co. of Ind.* v. *Wiseman* (1936), 102 Ind. App. 640, 4 N. E. 2d 568.

And it has even been said that the Act should be liberally construed to promote the purpose of its enactment, "even to the inclusion of cases within the reason although outside the letter of the statute," although we do not base our opinion on this. *In re Duncan, supra; Homan* v. *Belleville Lumber and Supply Co.* (1937), 104 Ind. App. 96, 108, 8 N. E. 2d 127; *Dietrich* v. *Smith* (1931), 93 Ind. App. 219, 176 N. E. 636. We recognize, of course, that the rule of liberal construction does not permit the law to be distorted so that compensation will be granted in violation of specific statutory provisions. *J. W. Jackson Realty Co.* v. *Herzberger* (1942), 111 Ind. App. 432, 40 N. E. 2d 379.

"We believe that it should be the concern of the court to interpret the act in such manner as to help the legislature accomplish the end that it intended and that the act should be used as a starting point from which judicial reasoning should begin with a view to the correction of the evils and an accomplishment of the ends sought." *Homan* v. *Belleville Lumber and Supply Co., supra.*

In ascertaining the intent of the legislature in enacting the 1947 amendment, it may be well to examine the recent legislative and judicial history of certain phases of the Workmen's Compensation Act.

In *Russell* v. *Johnson* (1943), 220 Ind. 649, 46 N. E. 2d 219, which was approvingly alluded to in *Cole* v. *Sheehan Construction Company, supra,* and followed in *Thomas* v. *Central Engineering Const. Co.* (1946), 116 Ind. App. 385, 63 N. E. 2d 295, it was held that a

woman, dependent in fact upon a man with whom she was living in adultery, was not necessarily precluded from recovering compensation benefits as his actual dependent. The Supreme Court, in effect, suggested that the General Assembly remedy this situation.

In 1945, the legislature amended § 37 of the Workmen's Compensation Act by § 6 of ch. 188, Acts of 1945, so that the evil results possible under the law as it had theretofore existed were at least partially avoided. *In re Marshall* (1947), 117 Ind. App. 203, 70 N. E. 2d 772, contains an excellent discussion of this. It was thereafter held that a woman who had a living husband, but who lived with and was wholly supported by an employee who died under circumstances obligating his employer to pay compensation, was not entitled to compensation for the employee's death as a total dependent in fact. *Willan* v. *Spring Hill Coal Corporation* (1948), 118 Ind. App. 422, 78 N. E. 2d 880.

In our opinion, the above-quoted amendment in 1947, was designed to further reduce the undesirable results which might have been possible under the law.

Prior to the 1947 amendment the Indiana Workmen's Compensation Act made no distinction between wives, based upon the type of marriage. It appears to us that the purpose of this amendment was not to discriminate between legal wives because one was married in one way and another in another way. Rather the legislature desired that it be made certain that the common-law relationship was a genuine one, and not a transitory meretricious connection, where the short time of its existence might raise reasonable doubts as to whether the parties intended a bona fide marriage.

In order to accomplish its object the legislature apparently felt that the social interest in denying compensation where meretricious relationships were in-

volved was so great that to accomplish this end they adopted the rule they did even though it might create the additional evil of denying compensation to lawful widows in some cases.

The requirement that the common-law relationship shall have existed openly and notoriously for not less than five years is not the test of a common-law marriage. For instance, in *Schilling* v. *Parsons, Administrator* (1941), 110 Ind. App. 52, 36 N. E. 2d 958, it is said:

> "Proof of this status varies, depending on the form of the marriage agreement. If the contract is in writing, signed by the parties, or if oral and witnessed, followed by cohabitation of the parties, the marital status is sufficiently established."

The statute should be construed so as to accomplish the end desired by the legislature, and so to minimize insofar as possible, any additional evils created thereby.

The statute only requires that appellant be decedent's common-law wife and that such common-law relationship shall have existed openly and notoriously for a period of not less than five years immediately preceding the death.

The appellant and decedent were residents of Indiana at the time of his death, and under the board's finding they were then husband and wife. We hold the term "common-law relationship" as used in the statute means a relationship that fulfills the requirements of the Indiana law as to common-law marriages, without reference to the place of its prior existence or the validity of that relationship under the laws of any state other than Indiana.

In our opinion, it is sufficient under this statute if appellant was the common-law wife of decedent in

Indiana at the time of his death, and if the common-law relationship, both in Illinois and Indiana, existed openly and notoriously for a period of not less than five years immediately preceding decedent's death and during all of this time fulfilled the requirements of the laws of Indiana relating to common-law marriages, including the requirement of capacity, under the Indiana law, to contract such a marriage.

Award reversed and proceeding remanded to the Industrial Board with instructions to make a finding of fact on the issue presented as to whether the common-law relationship of appellant and decedent existed openly and notoriously for a period of not less than five years immediately preceding the death, and to make an award accordingly. *Cole* v. *Sheehan Construction Company, supra; Hayes Freight Lines* v. *Martin, supra.*

Royse, J., dissents with opinion.

Draper, C. J., concurs with opinion.

## CONCURRING OPINION

DRAPER, J.—I concur in the decision and agree with the reasons assigned therefor. However, I should like to elaborate somewhat upon the reasoning of the majority in one respect.

Where a statute is so plain and unambiguous that it is susceptible of only one construction, we should not be concerned with the consequences resulting from that construction. We may not legislate. But where, as I think is the case here, a statute is fairly susceptible of more than one construction we may consider whether the legislature could have intended a construction which would produce unfair, unequal, and incongruous

results. Where the language of a statute does not by clear and unmistakable language *compel* such a result, a construction which renders the statute unfair or unjust in its operation should be avoided. See 50 Am. Jur., Statutes, § 368, et seq. Moreover, while it does not lie within our province to decide whether it is permissible for the legislature to discriminate between lawful wives equally situated, it is nevertheless true that we should construe a statute so as to avoid any conflict with constitutional limitations if such can be done.

We know judicially that several of our neighboring states recognize common law marriages. There is no suggestion here that either the claimant or the decedent were not marriageable at the inception of and during all the time they lived together as husband and wife. Neither is there any suggestion that they knowingly violated any law in attempting to contract a common law marriage in Illinois. If the widow in this case had lived with the decedent under the same circumstances in a neighboring state which recognizes common law marriages, and she had later removed to and continued the relationship in the state of Indiana, there would be no question that she would be entitled to compensation as the former wife and now the widow of the workman.

Bearing in mind the fact that the Workmen's Compensation Act is not a code of morals, but is a practical device for the economic protection of employees and those dependent upon them, I cannot believe that the legislature meant to discriminate against and deny compensation to this widow who came here from the state of Illinois, when under the same circumstances compensation would be granted to a woman who came here from one of our neighboring states in which common law marriages are recognized.

## DISSENTING OPINION

ROYSE, J.—I do not agree with the majority opinion in this case. In my opinion the construction they have placed on § 40-1403a, Burns' 1940 Replacement ·(1947 Supp.) ; Acts 1947, ch. 162, § 8, p. 523, not only completely destroys the legislative objective of this Act but it is in conflict with universally recognized rules of law on the subject of marriage.

"Marriage is the institution that is the foundation of the family and of society. It is regarded as basic to morality and civilization, and of vital interest to society and the state, greater even than the private interests of the spouses." 35 Am. Jur., Marriage, § 8, p. 185.

"Except as limited by constitutional provision, the legislature of each state has authority, with respect to the matrimonial contracts of its own citizens, to regulate the qualifications of the contracting parties, the forms or proceedings essential to constitute a marriage, the duties and obligations it creates, its effect on property rights, and the causes for its dissolution." 55 C. J. S., Marriage, § 2, p. 809.

"The general rule is that the validity of a marriage is determined by the law of the place where it was contracted; if valid there it will be held valid everywhere, and, conversely, if invalid by the lex loci contractus, it will be held invalid wherever the question may arise." 55 C. J. S., Marriage, § 4b, p. 811.

"A common-law marriage entered into in a jurisdiction which recognizes the validity of such a marriage will be recognized as valid in another jurisdiction, regardless of the rule which prevails in the latter jurisdiction with respect to the validity of common-law marriages. The converse is equally true—a marriage void where it is celebrated is void everywhere." 35 Am. Jur., Marriage, § 168, p. 285.

We know that common-law marriages are illegal and void in the State of Illinois. The record in this case is clear and positive that the appellant and decedent began living together while they were citizens of that state. It is equally clear that they were not married in accord with the provisions of the law of Illinois. Therefore, their living and cohabiting together was illicit and it gave neither party any of the rights or privileges of married persons.

In the case of *Compton et al.* v. *Benham et al.* (1909), 44 Ind. App. 51, 58, 85 N. E. 365, this court said:

> "When the facts show that an apparently lawful marriage was in fact an illicit relation in its beginning, the rule, as quoted in *Williams* v. *Williams* (1879), 46 Wis. 464, at page 480, is: 'A cohabitation illicit in its origin is presumed to be of that character, unless the contrary be proved, and cannot be transformed into matrimony by evidence which falls short of establishing the fact of an actual contract of marriage. Such contract may be proved by circumstances, but they must be such as to exclude the inference or presumption that the former relation continued, and satisfactorily prove that it had been changed into that of actual matrimony by mutual consent.'"

See also: *Meehan* v. *Edward Valve etc. Co.* (1917), 65 Ind. App. 342, 344, 117 N. E. 265; *Mayes* v. *Mayes* (1925), 84 Ind. App. 90, 147 N. E. 630; *Dunlop* v. *Dunlop* (1935), 101 Ind. App. 43, 50, 198 N. E. 95; *Young* v. *General Baking Co.* (1937), 104 Ind. App. 658, 661, 12 N. E. 2d 1016; *Cossell* v. *Cossell* (1945), 223 Ind. 603, 605, 63 N. E. 2d 540; 55 C. J. S., Marriage, § 43, Subd. 2, p. 898; 60 A. L. R. 546n; 94 A. L. R. 1006n.

The subject-matter of § 40-1403a, *supra*, is "wife." Webster's New International Dictionary defines "wife" in these words: "A woman united to a man in *lawful wedlock; a married woman;* spouse;—correl. of hus-

band." (My emphasis). Therefore, it seems clear that when the legislature said: "The term 'wife' as used in this subsection shall exclude a common-law wife unless *such common-law relationship* shall have existed openly and notoriously for a period of not less than five years immediately preceding the death, etc.," it meant by the emphasized words the relationship of a "wife." Surely it could not be said that if a married woman left the home of her legal husband and lived openly and notoriously together with another man for a period of five years or more, and if then her legal husband died, and a year later the man with whom she had been living illicitly died, that she would be entitled to compensation benefits under the provision of the Act. Yet, that is the effect of the majority holding in this case, because, they hold the period they lived together illicitly in Illinois should be recognized by Indiana as a part of their married life, for the reason Indiana tolerates common-law marriages.

It seems to me the majority opinion has completely ignored the firmly established general rule heretofore cited, that the validity of a marriage is to be determined by the law of the state in which it was contracted.

The above referred-to section of the Act merely requires that the parties to a common-law marriage must have lived together as husband and wife for a period of not less than five years after the *marriage* was entered into. It does not require, as the Industrial Board seemed to believe, that the parties to such a marriage must have lived in this state for five years.

However, in the view I take of this case, since the record is clear and positive that there was no marriage in Illinois, then even if the evidence is sufficient to show that a common-law marriage was entered into after appellant and decedent moved to Indiana, the common-

law marriage relationship not having continued for five years, appellant was properly denied compensation. Therefore, I would regard the words "in Indiana" in the Board's finding and award as surplusage and affirm the award.

NOTE.—Reported in 88 N. E. 2d 398.