GUEVARA *v.* INLAND STEEL COMPANY ET AL.

[Appellate Court No. 17,876. Transfer denied January 20, 1950. Dissenting Opinion filed February 17, 1950.]

Emmert, J., dissents with opinion.

*Harold J. Douthett,* of Hammond; *Fischer, Bosgraf & Mackenzie;* and *Leonard Bosgraf,* all of Chicago, Illinois; and *Kellam Foster* (of counsel), of Chicago, Illinois, for appellant.

*Dorsey, Travis & Tinkham,* of Hammond; and *Baker & Daniels,* of Indianapolis, for appellees.

## DISSENTING OPINION

EMMERT, J.—This appeal came for the consideration of this court on a petition to transfer, which was denied. The opinion of the Appellate Court, *Guevara* v. *Inland Steel Company* (1949), 120 Ind. App. 47, 88 N. E. 2d 398, held that if the claimant, under the Workmen's Compensation Law, had lived with the decedent as his wife, without benefit of ceremonial marriage during a period of residence in both Illinois and Indiana, "it is sufficient under this statute if appellant was the common-law wife of decedent in Indiana at the time of his death, and if the common-law relationship, both in Illinois and Indiana, existed openly and notoriously for a period of not less than five years immediately preceding decedent's death and during all of this time fulfilled the requirements of the laws of Indiana relating to common-law marriages, including the requirement of capacity, under the Indiana law, to contract such a marriage." Royse, J. dissented with an opinion with which I agree. Since the opinion of the Appellate Court does not fit in any known pattern of the authorities on conflict of laws and statutory construction, further notice of the departure should be brought to the attention of the profession.

In 1943 this court decided in *Russell* v. *Johnson* (1943), 220 Ind. 649, 46 N. E. 2d 219, that under § 38 of ch. 172 of the Acts of 1929, § 40-1403, Burns' 1940 Replacement, defining dependents under the Workmen's Compensation Act, a married woman living in adultery with the decedent, and depending upon him for support at the time of his death, could be a de-

pendent under the act. The court there recognized the matter of dependency was one for legislative determination in the following language: "This matter is within the control of the General Assembly and if that body concludes on a reconsideration of the subject that the Workmen's Compensation Act of 1929 does not express the proper public policy, it is subject to amendment. It is not for us to legislate." (p. 666.)

In 1947 the Workmen's Compensation Act was amended on dependency, the change material to this appeal being as follows:

"The following persons are conclusively presumed to be wholly dependent for support upon a deceased employee and shall constitute the class known as presumptive dependents in the preceding section:

"(a)   A wife upon a husband with whom she is living at the time of his death, or upon whom the laws of the state impose the obligation of her support at such time. The term 'wife' as used in this subsection shall exclude a common-law wife unless such common-law relationship shall have existed openly and notoriously for a period of not less than five [5] years immediately preceding the death."   § 40-1403a, Burns' 1940 Replacement (1947 Supp.), (Acts 1947, ch. 162, § 8, p. 523.)

"Words and phrases shall be taken in their plain, or ordinary and usual, sense. But technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." § 1-201, Burns' 1946 Replacement (2 R. S. 1852, ch. 17, § 1, p. 339). The provisions of this section are clear and unambiguous, and there is no occasion to resort to any rules of statutory construction for the determination of the legislative intent. *Tucker* v. *Muesing* (1942), 219 Ind. 527, 39 N. E. 2d 738. The rule for this court to follow was correctly declared in

*Kunkalman* v. *Gibson* (1908), 171 Ind. 503, 509, 510, 84 N. E. 985, 86 N. E. 850, as follows:

". . . Perhaps no better statement can be found of the doctrine that exceptions should not ordinarily be declared by the courts where the legislature speaks broadly than is contained in *City of Pittsburgh* v. *Kalchthaler* (1886), 114 Pa. St. 547, 552, 7 Atl. 921, wherein the supreme court of Pennsylvania said: 'We think it is always unsafe to depart from the plain and literal meaning of the words contained in legislative enactments out of deference to some supposed intent, or absence of intent, which would prevent the application of the words actually used to a given subject. Such a practice is really substituting the theories of a court, which may, and often do, vary with the personality of the individuals who compose it, in place of the express words of the law as enacted by the lawmaking power. It is a practice to be avoided. It has been condemned by many text-writers and by many courts. Occasionally it has been departed from, but the path is a devious and a dangerous one, which ought never to be trodden, except upon considerations of the most convincing character and the gravest moment.' "

At the time of the adoption of the amendment, the term "common-law wife" had a well defined meaning under the many well decided cases of this state, and the legal principles for determining the validity of marriages in other jurisdictions were well settled. It is obvious that the legislature intended to change the existing rule on dependencies as declared in *Russell* v. *Johnson* (1943), 220 Ind. 649, 46 N. E. 2d 219, *supra.* The legislature had the right to provide that a common-law wife be excluded unless the relationship as common-law wife shall have existed openly and notoriously for not less than five years immediately preceding death. Anything less than that is barred, and it is not for this court to substitute its judgment for that

of the legislature in its determination of desirable public policy.

The fallacy in the majority opinion lies in the assumption that there could be created a common-law relationship or the status of common-law marriage in Illinois which could be tacked on to the period of residence in Indiana, so that the status could exist openly and notoriously for more than five years. The statutes of Illinois require ceremonial marriage to be made of record and prohibit common-law marriages in that state.[1]

"Marriage is a status resulting from a contract to marry entered into by a man and a woman capable of making such a contract. Cohabitation cannot of itself constitute marriage." *Compton* v. *Benham* (1908), 44 Ind. App. 51, 58, 85 N. E. 365. At an early date this court said: "In this light, marriage is more than a contract. It is not a mere matter of pecuniary consideration. It is a great public institution, giving character to our whole civil polity. Hence, as between husband and wife, there is no constitutional provision protecting the marriage itself, or the property incident to it, from legislative control, by general law, upon such terms as public policy may dictate. The sovereign power may, by general enactment, regulate and mold their relative rights and duties at pleasure." *Noel* v. *Ewing* (1857), 9 Ind. 37, 50. The legislature has the right to

---

[1] Ch. 89, § 4, Smith-Hurd Illinois Statutes state in part: "Provided, however, that all marriages commonly known as 'common law marriages' hereafter entered into shall be and the same are hereby declared null and void unless after the contracting and entering into of any such common law marriage a license to marry be first obtained by such parties who have entered into such common law marriage and a marriage be solemnized as provided by this act in the same manner as is provided for persons who have obtained a license to be joined in marriage and are about to be joined in any such marriage."

control the substance and formalities of the contract and the results which flow from the creation of the status.[2] In *Carnegie-Illinois Steel Corp.* v. *Mason* (1942), 112 Ind. App. 292, 44 N. E. 2d 524, it was agreed that an oral marriage agreement made at Cairo, Illinois in 1930, followed by cohabitation as a husband and wife, was an invalid contract under the law of the State of Illinois, and the court assumed that the relationship was illicit.

The general rule is that the "validity of a marriage is governed by the law of the place of celebration." II Beale, *Conflict of Laws* 669, § 121.2. In *Roche* v. *Washington* (1862), 19 Ind. 53, 57, this court stated the rule, "that marriages, valid where made, will be upheld in other States." See also *Loughran* v. *Loughran* (1934), 292 U. S. 216, 223, 54 S. Ct. 684, 78 L. Ed. 1219, 1223; *Frazen* v. *E. I. Du.Pont De Nemours & Co.* (CCA 3rd, 1944), 146 F. 2d 837. Upon every consideration of logic a pretended marriage void at the place of celebration or origin cannot be made valid by the law of another state. "As the law of marriage is a part of the *jus gentium,* the general rule undoubtedly is, that a marriage, valid or void by the law of the place where it is celebrated, is valid or void everywhere." II *Kent's Commentaries* 128 (14th Ed.). "A marriage is invalid everywhere if any mandatory requirement of the marriage law of the State in which

---

[2] "Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of the people than any other institution, has always been subject to the control of the Legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects ' upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution." *Maynard* v. *Hill* (1888), 125 U. S. 190, 205, 31 L. Ed. 654, 657, 8 S. Ct. 723.

the marriage is celebrated is not complied with." Restatement, *Conflict of Laws* § 122, p. 188.

In *Jordan* v. *Missouri & Kansas Telephone Co.* (1909), 136 Mo. App. 192, 116 S. W. 432, the court declared that an attempted common-law marriage in the State of New York, which prohibited the creation of such a status, would not be recognized as a valid marriage in the State of Missouri, which recognized common-law marriages as valid when created in Missouri.

Clearly the Indiana courts cannot extend the jurisdiction of Indiana to Illinois and make lawful an illicit cohabitation there. The relationship of common-law wife could not exist in Illinois for any period of time within that state. There could not be any actual contract of marriage entered into by the parties in Illinois because the Illinois legislature prohibited it.

Nor are we at liberty to say that, because a common-law marriage could be entered into in another state which permits and recognizes such marriages as valid, and continued in Indiana for a sufficient length of time so that the common-law marriage existed in both states for five years, the legislature intended no different result where the parties attempted to contract a common-law marriage in a state which makes it void, and then moved to Indiana and purported to cohabit as common-law husband and wife for less than five years although the combined period in both states may have continued five years or more. The complete answer to that contention is the legislature did not say an illicit cohabitation begun and continued in another state should be considered a common-law marriage in this state. For the courts of review of this state to so hold is sheer judicial legislation without any basis of authority or reason. If this court is to take such liber-

ties with the plain meaning of legislation, no lawyer would ever be able to advise his clients with reasonable certainty as to their statutory rights.

Under the facts in this appeal, in any event there would have to be a new contract of marriage entered into in Indiana for a valid common-law marriage to exist in this state.

The rights granted by the Workmen's Compensation Act are purely statutory, and it is fundamental that "only those persons are entitled to compensation who are within the terms of the compensation law and they take subject to its conditions." 71 C. J. 527, § 270. The claimant must derive her rights from the statute. *Willan* v. *Spring Hill Coal Corp.* (1948), 118 Ind. App. 422, 78 N. E. 2d 880. "Persons expressly excluded by the applicable statute do not take." 71 C. J. 528, § 270.

The transfer should have been granted.

NOTE.—Reported in 90 N. E. 2d 347.