[Civ. No. 1364. Fifth Dist. Feb. 19, 1971.]

BONNIE LEE NEUREITHER, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
LUFKIN FOUNDRY & MACHINE CO. et al., Respondents.

**COUNSEL**

Robert L. Meadows for Petitioner.

Rupert A. Pedrin, Richard E. Ryan, Hanna & Brophy, Paul Busacca and Warren L. Hanna for Respondents.

## Opinion

**STONE, P. J.**—Petitioner seeks review of the Workmen's Compensation Appeals Board opinion and order denying reconsideration of the referee's findings and order which denied death benefits to her as surviving widow. It is not denied that petitioner and Arthur Neureither were married in a proper ceremonial marriage on August 12, 1960, nor that thereafter they lived as husband and wife until his death January 17, 1969, nor that she was wholly dependent upon him for support.

The denial of death benefits is based upon petitioner's marriage to Loren Burris in 1949. She and Burris separated in 1952 and he commenced divorce proceedings in Los Angeles County, after which they became reconciled; he did not bring the divorce action to fruition. They again separated in 1953 and they last saw one another in Hawthorne, California, in 1954, at which time he told her he was going to the State of Michigan. About three weeks later he called her from Saginaw and told her he was getting a divorce and "that I was free to do as I wanted to and he hoped I would find a good man." Petitioner neither saw nor heard from Burris thereafter, nor did she hear anything about him. She testified that she believed he had "gone ahead and obtained a divorce as he said he would" and, relying thereon, she married Neureither some six years later. The referee found that petitioner did not enter into her marriage with the decedent in good faith, and denied her claim; the Workmen's Compensation Appeals Board denied her petition for reconsideration.

Petitioner makes claim to death benefits pursuant to section 4702 of the Labor Code upon two theories, (1) that a valid marriage between Neureither and her was in effect at the time of his death, under the rationale of Civil Code section 61, now Civil Code section 4401; (2) that under Labor Code section 3501 she qualifies for benefits as a putative wife.

Taking up, first, the question of a valid marriage, we turn to Civil Code section 61, which provides, in pertinent part: "A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, . . .

"2. Unless such former husband or wife is absent, and not known to such person to be living for the space of five successive years immediately preceding such subsequent marriage, or is generally reputed or believed by such person to be dead at the time such subsequent marriage was con-

tracted. In either of which cases the subsequent marriage is valid until its nullity is adjudged by a competent tribunal."

Petitioner asserts that her marriage to Neureither had not been adjudged a nullity by "a competent tribunal," that her former husband, Burris, was absent for more than five successive years immediately preceding her marriage to Neureither and that Burris was not known to her *to be living* when she married Neureither. She alleges that these circumstances entitle her to death benefits under Labor Code section 4702. The crux of her argument is that under Civil Code section 61 a second marriage is not "void from the beginning," but merely voidable by a court of competent jurisdiction if the wife or husband of the previous marriage has been absent for a period of five successive years immediately preceding the subsequent marriage and, additionally, any one of three separate conditions exists, to wit, that the absent spouse is "not known to such person to be living for the space of five successive years" *or* that such spouse is "generally reputed" *or* "believed by such person" to be dead at the time such subsequent marriage was contracted. In short, she argues that in her case she need not have believed Burris was dead—it is sufficient that he was not known to her to be living for the space of five successive years. She testified that she did not know whether he was alive or dead, and therefore he was not known to her to be living. She fortifies her argument that the conditions must be read in the alternative by reference to the last sentence of subdivision 2, "In *either* of which cases the subsequent marriage is valid until its nullity is adjudged by a competent tribunal." (Italics added.)

There is much to be said for petitioner's interpretation of Civil Code section 61, subdivision 2, particularly so since the conditions are separated by the disjunctive "or" rather than conjoined by the conjunctive "and." Judged textually, the argument is supportable, but the Supreme Court, in an early case, has held that "belief of the party that the former husband or wife *is dead is an essential element,* for the statute expressly so makes it." (*Wilcox* v. *Wilcox,* 171 Cal. 770, 776 [155 P. 95]. Italics added.) This broad language, which touches every part of section 61, has never been modified by the Supreme Court, nor have the various conditions delineated in the section been discussed as alternatives, that is, the former spouse believed to be dead as contrasted with "not known to such person to be living."

Were the interpretation of section 61 a matter of first impression, we should find petitioner's argument strongly persuasive since this is a workmen's compensation case and the Labor Code admonishes that cases falling within the ambit of the act must be liberally construed. Moreover,

there are no conflicting claims in this case in that petitioner is the only claimant to the widow's benefits. As an intermediate appellate court, we are bound by the Supreme Court's interpretation of section 61. (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ We turn to petitioner's second ground of appeal, namely, that as a putative spouse she is entitled to a widow's benefits under Labor Code section 4702 by virtue of Labor Code section 3503.[1]

The law governing the rights of a putative spouse under the Labor Code was clarified by two decisions arising out of the same claim for death benefits, *Brennfleck* v. *Workmen's Comp. App. Bd.,* 265 Cal.App.2d 738 [71 Cal.Rptr. 525] and 3 Cal.App.3d 666 [84 Cal.Rptr. 50]. The first case established that a putative wife is a dependent within the ambit of Labor Code section 3503. The matter was sent back for further hearing, and the board concluded that a putative wife, although entitled to benefits as a dependent, was not entitled to the benefits inuring to a "surviving widow" under Labor Code section 4702. On the second appeal, the reviewing court held that a putative spouse is a "surviving widow" under second 4702 of the Labor Code.

■ A putative spouse is one who believes in good faith that she is a party to a valid marriage, though the marriage is invalid. (*Brennfleck* v. *Workmen's Comp. App. Bd., supra,* 265 Cal.App.2d at p. 743.)
■ Petitioner's contention that she was the putative spouse of Neureither is based upon her testimony that she believed her former husband, Burris, had obtained a divorce in the State of Michigan, and that she was free to marry Neureither, a belief based upon Burris' statement by telephone from Michigan some six years earlier that he was going to obtain a divorce from her. Burris, whose testimony was taken in Michigan by the insurance carrier, verified that he did make such a telephone call from Michigan to petitioner in California, and did tell her that he was going to obtain a divorce, but that he did not do so.

The facts parallel those in *Estate of Goldberg,* 203 Cal.App.2d 402 [21 Cal.Rptr. 626], except that in *Goldberg* the widow thought her prior marriage had been annulled before she married the deceased and, here, petitioner thought her prior marriage had been dissolved by divorce. In *Goldberg,* the court said, at pages 411-412: "The fact that Edith pro-

[1]Labor Code section 3503 reads: "No person is a dependent of any deceased employee unless in good faith a member of the family or household of the employee, or unless the person bears to the employee the relation of husband or wife, child, posthumous child, adopted child or stepchild, father or mother, father-in-law or mother-in-law, grandfather or grandmother, brother or sister, uncle or aunt, brother-in-law or sister-in-law, nephew or niece."

duced no record to support her alleged annulment does not prove that she could not have believed in good faith that she was eligible to marry Sam. In *Freeman S.S. Co.* v. *Pillsbury,* 172 F.2d 321, a search of the marriage records of Tijuana failed to show any record of the marriage testified to by the wife. The court held that this fact did not outweigh the other evidence and held the marriage valid because of the presumption. A somewhat similar holding was made in *Estate of Chandler* (1931) 113 Cal.App. 630 [299 P. 110].

"If Edith believed in good faith that a valid marriage existed, then in law she was a putative spouse. [Citations.] The belief held at the time of the alleged marriage is the determining factor [citations], even though the one holding the belief is legally incapable of entering the marriage."

Although the facts of the two cases are very similar, the trial court in *Goldberg* believed the widow's testimony and found her to have been the putative wife of the deceased while, here, the referee did not believe petitioner's testimony that she believed Burris had obtained a divorce before she married Neureither.

Counsel for respondents point out that a referee's finding adopted by the appeals board cannot be reweighed by a reviewing court. This is correct as to a finding based solely on substantial evidence, but it does not preclude setting aside a finding based upon a misconception of the law. The referee, in his "Opinion On Order," noted that petitioner had a seventh grade education but that, nevertheless, she must have known that legal papers had to be served upon her in California before a divorce could be obtained in Michigan. He based this conclusion partially upon the fact petitioner had been married prior to her marriage to Burris and had secured an annulment. From this he reasoned that she must have known that legal papers had to be served in a divorce action; for all the record shows, the defendant in the annulment action may have filed a voluntary appearance. It is common knowledge among the members of the legal profession that a plaintiff's attorney usually takes care of filing the complaint and securing service of a copy of the complaint and summons on the defendant. Petitioner testified that she did not know what her attorney did other than to represent her when she appeared in court.

It is of greater significance that the annulment was obtained in California, against a California resident, so that the proceeding could not have imparted notice or knowledge to petitioner of the Michigan law of constructive service. Not only is the record devoid of reference to the Michigan law of constructive service of process upon a nonresident in a divorce action, but petitioner testified that she knew nothing about the laws of Michigan.

We do not reach the question whether a lay person with a seventh grade education can be held accountable for a knowledge of the law of a foreign state, because the referee based his finding upon petitioner's experience in a California court. In doing so, he not only used the law of the wrong state but he overlooked the fact constructive service or substitute service did not always require personal service in California, under former Code of Civil Procedure section 413 which was in effect at all times pertinent to this action.

The referee's finding that petitioner must have known that she, in California, would have to be personally served with process in a Michigan action in rem against a nonresident, is not supported by the record.

The order of the Workmen's Compensation Appeals Board is annulled, and the cause is remanded to that board for further proceedings consistent with the views expressed herein.

Gargano, J., and Ginsburg, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.