Gloria TATUM, Individually, and Gloria
Tatum, as Natural Mother, Guardian
Ad Litem and Next Friend of Rosbon
Tatum and Jacqueline Tatum, minor
children, and City of Tulsa, Oklahoma,
a municipal corporation, Petitioners,

v.

Florine Bagby TATUM, and Oklahoma
Workers' Compensation Court,
Respondents.

No. 54808.

Supreme Court of Oklahoma.

May 11, 1982.

Rehearing Denied May 27, 1987.

Waldo F. Bales, City Atty., Victor R. Seagle, Tulsa, for petitioner, City of Tulsa.

Pat Malloy, Malloy & Malloy, Bruce O. Taliaferro, James R. Elder, Taliaferro, Malloy & Elder, Tulsa, for other petitioners.

Charles E. Payne, Russell, Payne & Farber, Oklahoma City, for respondents.

OPALA, Justice:

This case presents four issues: [1] Did the trial tribunal use the wrong criteria in determining the identity of statutory beneficiaries of a death claim? [2] Was the legal widow entitled to an award as decedent's deserted spouse? [3] Did the trial tribunal correctly deny death benefits to the person who sought an award for herself as the common-law wife and for her two children as dependent stepchildren of the deceased worker? [4] Does the amount of fee awarded to counsel for a successful claimant present a reviewable issue before us? We answer the first and fourth questions in the negative and the second and third in the affirmative.

By separate claims for death benefits Gloria Tatum [Gloria] and Florine Bagby Tatum [Florine] each claimed to be the surviving spouse of Grady Tatum [decedent] who suffered fatal on-the-job injuries.

Florine was married to the decedent in 1958. They lived together in Texas until about 1971 when he left the marital home.

Gloria met the decedent in 1972. He, she and her two children by another marriage established a common household in 1973. During the same year she bore Grady's child, Shy-Easter Tatum [Shy]. During the period of their cohabitation Gloria and the decedent held themselves out as husband and wife. They rented property together, established joint charge accounts, bought

insurance policies on each other's life and incurred loans as co-obligors. Gloria's two children assumed the decedent's name both at school and for medical purposes. He and she contributed equally to the children's support. At no time before the decedent died was Gloria aware of his previous ceremonial marriage to Florine.

As Grady's widow Gloria brought a death benefit claim for herself, his child Shy and for her other two children *qua* decedent's stepchildren. Florine also brought a claim for death benefits as the surviving spouse. Neither decedent's employment nor his accidental death was in controversy. The only question tendered to the trial tribunal was the status of Florine and Gloria, as well as that of Gloria's children, as statutory claimants.

The trial judge found Florine to be the surviving spouse. She and Shy, as decedent's natural child, were both granted an award. Gloria and her other children were excluded. Gloria and the employer seek our review. The employer asserts that Grady left no surviving spouse and that Shy is his only legal survivor entitled to benefits. Because the award to Shy is unchallenged here, we treat it as final.

I.

Gloria contends the trial tribunal used obsolete criteria in determining the death award beneficiaries. She asserts that she and her two children are eligible under the statutory provisions which were in effect at decedent's death in January, 1979.

Under the pre-1977 statutory scheme, a dependent had to be an "heir at law" of the deceased employee.[1] The 1977 amendments did away with the "heir-at-law" requirement. It was replaced with a description of specific classes of persons upon

1. Before its revision in 1977, 85 O.S.1971 § 3.1 provided in pertinent part: "In respect to death benefits under this Act, the following definitions shall apply: (1) The term 'Dependent' or 'Dependents', as used in this Act, shall mean and include the heirs at law of the deceased, as defined by the Descent and Distribution Statutes of Oklahoma. * * *".

Citation to statutory material in the text identifies section numbers in Title 85.

whom a claim to benefits came to be conferred.[2]

Gloria advances her argument—that the trial tribunal applied wrong legal precepts—as one that is firmly supported by the language in a trial judge's finding which recites that the "deceased left as his sole and only dependent *heirs at law* Florine ..., surviving spouse and Shy ..., his natural daughter". [Emphasis added].

We are not persuaded because from other findings made in the order it is clear the award was rested upon currently effective statutory standards. The trial judge's order found that Florine's status was that of a "legal wife" who lived apart from the decedent because of his *desertion*. It also recited that although Gloria "proved a prima facie case of common law marriage", she did not occupy the "surviving spouse" status and her two children could not claim as dependent stepchildren because of the decedent's subsisting legal marriage to Florine, his deserted spouse. Both the character and the amount of benefits allowed Florine and Shy clearly reflect that the award was bottomed on the 1977 revisions. Under the prior schedule of compensation a fixed amount had to be apportioned among the authorized beneficiaries,[3] while the 1977 amendments provide not only a lump-sum payment but also continuing benefits that are measured by an average-weekly-wage formula.[4] Both a statutory lump-sum award, based on the applicable schedule, and properly-computed weekly compensation payments were granted.

Because the order clearly indicates that the amendments effective at decedent's death were considered and followed in determining each claimant's eligibility for benefits, the lone reference in the order to "heirs at law" must be treated as an inadvertent use of the now obsolete terminology. Its inclusions is mere surplusage that

is without any legal effect. We treat it as harmless error.

## II.

▮ Both Gloria and the employer urge error in the trial tribunal's finding that Florine was the "surviving spouse". Florine's status is rested on the trial judge's determination that she had been "deserted" by the decedent in 1971. The workers' compensation law expressly provides that an employee's spouse, although living alone at the time of the worker's death, may, by reason of desertion, occupy the status of the "surviving spouse". 85 O.S.Supp.1977 § 3.1 A(2).

Neither Gloria nor the employer disputes that Florine was in fact abandoned. Their contention is that Florine had lost her statutory status *qua* deserted wife. This is so because she failed either to pursue her husband with a view to bringing him back home or failed to follow him in his travels. Lack of active efforts to bring about the end of spousal separation, they urge, amounts to Florine's acquiescence in the desertion and is fatal to her claim under the statute.

A deserted spouse is not required to "dog" her husband's footsteps in an endless quest to achieve reunion.[5] By his established lifestyle the husband revealed a predisposition to wandering, short-term employment, discontent with jobs and instability. Florine's own job and the house she had purchased no doubt represented her only security. The law would indeed be both inastute and unrealistic if it expected a wife to abandon her only precious possessions in a fruitless quest after an errant husband who had given no indication of his desire to return and stay. Florine's status as a deserted spouse was not lost either by

---

**2.** Pertinent provisions of 85 O.S.Supp.1977 § 3.1 are: "A. In respect to death benefits under the Workers' Compensation Act, the following definitions shall apply: (1) 'Actually dependent' means: a. a surviving spouse as defined in this section; b. a child as defined in this section; or c. any other person dependent in fact upon the employee and refers only to a person who re-

ceives one-half (½) or more of his support from the employee; * * *".

**3.** 85 O.S.Supp.1975 § 22(7–8).

**4.** 85 O.S.Supp.1977 § 22(8–11).

**5.** *Gibbons v. Atlantic Steel Co.,* 124 Ga.App. 71, 183 S.E.2d 212, 213 [1971].

inaction or non-pursuit.[6] Affirmative acts, such as suing for divorce or separate maintenance, active resistance to reconciliation efforts, or cohabitation with another may be indicative of a changed character in the spousal relationship. They are all absent in this case. A legal change might also manifest itself through a formal separation agreement, refusal to join the spouse whenever the opportunity may arise, or some other outward recognition that the marriage relationship had come to an end. Florine did none of these things.

Since their marriage in 1958, and before the critical 1971 separation, the decedent had abandoned Florine on numerous other occasions. Until then he always came back. When he finally left in 1971, it was without notice and while Florine was at work. She thought she knew where he went but she was not sure how long he was going to stay away. Over the years he communicated with her several times. He even returned to see her on several occasions, but never to stay. Although Florine didn't know why Grady left, she made it clear that he was always welcome home. She felt she could not force the issue. He had to be ready to come back. In the meantime, she maintained the home they previously occupied together and kept her job as a means of providing herself with a livelihood. She had not initiated a divorce suit nor, to her knowledge, had he brought one against her.

The trial judge's finding that Florine was the decedent's deserted spousal survivor entitled by statute to benefits rests on competent evidence and is free from legal error.

---

**6.** *Lavino Shipping Co. v. Donovan,* 166 F.Supp. 909, 914 [E.D.Pa.1958]; *Creasey v. Creasey,* 168 Mo.App. 68, 151 S.W. 219, 227–228 [1912]; *Thompson v. Lawson,* 347 U.S. 334, 337, 74 S.Ct. 555, 557, 98 L.Ed. 733, 738 [1954].

**7.** *Whitney v. Whitney,* 192 Okl. 174, 134 P.2d 357, 359 [1942].

**8.** *Parkhill Truck Co. v. Row,* Okl., 383 P.2d 203 [1963].

**9.** *Henderson v. Travelers Ins. Co.,* 354 So.2d 1031 [La.1978]; *Rivieccio v. Botham,* 27 Cal.2d 621, 165 P.2d 677, 680 [Cal.1946].

## III.

Gloria contends that she and two of her children were entitled to death benefits *either* as decedent's surviving wife and stepchildren *or* as his dependents. The basis of Gloria's claim is that at his death she and the decedent lived in a common-law marriage in which her children were dependent upon him for more than half of their support. The fact of her described relationship with the decedent is not disputed. At issue are the legal attributes of their interaction.

By Oklahoma law only one person may be recognized as the legal spouse of another.[7] Gloria's relationship with the decedent would bear all the earmarks of a legal marriage if it were not for his prior valid and undissolved union with Florine. A ceremonial marriage that followed a valid and undissolved common-law marriage would have been equally void.[8] Although in a few states a person in a marriage-like relationship with an already married person[9] may recover compensation, the applicable statues in those jurisdictions are broader than Oklahoma's. Moreover, they include specific provisions authorizing recovery by an additional class of persons—those, other than a legal spouse or blood relative, who were actually dependent upon the employee for their support. There is no counterpart provision in Oklahoma which similarly enlarges the class of authorized claimants.

The 1977 revisions provided, in § 3.1, three categories of persons "actually dependent" in the eligibility sense. These categories are (a) the surviving spouse,[10] (b) child[11] and (c) "any other person de-

---

**10.** A "surviving spouse" is defined in § 3.1 A(2) as "the employee's spouse living with or actually dependent upon the employee at the time of his injury or death, or living apart for justifiable cause or by reason of desertion by the employee".

**11.** A "child" is defined in § 3.1 A(3) as "... a natural or adopted son of daughter or the employee under eighteen (18) years of age ... The term 'child' includes ... an actually dependent stepchild or an actually dependent acknowledged child born out of wedlock". This case does not require us to pass on the constitutionality of the legislative provisions that include

pendent in fact upon the employee".[12] The qualifying words of the statute—"with respect to death benefits"—require that, when giving meaning to the statutory scheme, we look to the schedule of compensation in § 22(8–11) both for the formula by which to determine the amount of compensation due each beneficiary as well as for the enumeration of specific classes of persons eligible for death benefits. Under this section—in addition to the surviving spouse and children—the persons identified as eligible to claim dependency are parents, brothers, sisters, grandparents and grandchildren.[13] Our statute creates *no* general class of authorized claimants for persons who actually depended on the decedent worker for support contributions but do not fall into any of the three recognized categories.

An additional provision—not contemplated by the legislature—cannot be read into the clear wording of a statute.[14] If a claimant does not fall within a recognized class, none can be created for him, no matter how great the need may be. An attempt to do so would usurp the power of the legislature.[15]

Because of decedent's prior marriage to Florine, Gloria's common-law marriage to him cannot be recognized as a valid union and her claim to benefits must be rejected.[16] The decedent had no capacity to enter into a marriage with Gloria while his spousal bond with Florine remained undissolved. Decedent's non-spousal relationship with Gloria did not ripen into a legal union before his death.[17] Although she looked to the decedent for her partial support, she did not stand in a spousal capacity. Her status of *de facto* but not *de jure* dependency does not entitle her to death benefits.[18]

Gloria's two children are also precluded from receiving benefits. Since she did not stand in a spousal relationship *vis-a-vis* the deceased, Gloria's children could not be considered decedent's stepchildren. *De facto* dependency is not enough to create the legal basis for recovery. Some states have enacted statutes that allow compensation to *any* child maintained in the decedent's household or to any one to whom the decedent stood *in loco parentis*. Our dependency provisions do *not* extend that far.[19]

There was no error in denying death benefits to Gloria and to her two children. These persons do not fall within any statutorily cognizable class of authorized claimants.

---

stepchildren among authorized claimants. *Roberts v. Merrill,* Okl., 386 P.2d 780, 783–784 [1963]. See also footnote, infra note 15.

**12.** A dependent person under § 3.1 A(1)(c) "refers only to a person who receives one-half ($\frac{1}{2}$) or more of his support from the employee".

**13.** The definition of "parents", "brothers and sisters", "grandparents" and "grandchildren" is found in § 3.1 A(4), (5) and (6).

**14.** *Stemmons, Inc. v. Universal C.I.T. Credit Corporation,* Okl., 301 P.2d 212, 216 [1956].

**15.** Legislative power to fashion a substituted compensation remedy for wrongful death (i.e. death benefits recoverable under the Workers' Compensation Act) is derived from the 1950 amendment to Art. 23 § 7, Okl.Const. A significant variance between the class of statutorily authorized claimants in wrongful death actions (12 O.S. 1971 §§ 1053 and 1054) and that in compensation proceedings would no doubt arise if we were to recognize that an open-ended *de facto* dependency was in fact created by 85

O.S.Supp.1977 § 3.1 A(1)(c). The narrow language of the authorizing amendment to Art. 23 § 7, Okl.Const. might preclude an open-ended *de facto* dependency scheme from passing constitutional muster. *Roberts v. Merrill,* Okl., 386 P.2d 780, 784 [1963].

**16.** *Madison v. Steckleberg,* 101 Okl. 237, 224 P. 961 [1924]; *Marcum v. Zaring,* Okl., 406 P.2d 970, 973 [1965].

**17.** *Lopez v. Bonner,* Okl., 439 P.2d 687, 689 [1968]; *In re Reichert,* 516 P.2d 704, 706 [Idaho 1973].

**18.** *Rush v. Holtzclaw,* 154 Ga.App. 4, 267 S.E.2d 316, 318 [1980]; *Meade v. State Compensation Commissioner,* 147 W.Va. 72, 125 S.E.2d 771, 775 [1962].

**19.** *Renovich v. Bethlehem Mines Corp.* 131 Pa. Super. 351, 200 A. 122, 124 [1938]; *Kransky v. Glen Alden Coal Co.,* 354 Pa. 425, 47 A.2d 645, 646 [1946]; *Campton v. Industrial Commission,* 106 Utah 571, 151 P.2d 189, 192 [1944].

### IV.

Counsel for Shy contends that, measured by the market value of the service that was rendered, the amount of counsel fee awarded him for representing her is grossly inadequate.

 Because the award to Shy had become final for want of a timely proceeding challenging it in this court and inasmuch as the aggrieved counsel did not file a petition for review in his own name,[20] the issue tendered is not properly before us.[21] No relief can be granted in this court to one who has not brought a proceeding for review.[22]

Award sustained.

IRWIN, C.J., BARNES, V.C.J., and LAVENDER, HARGRAVE and WILSON, JJ., concur.

HODGES, SIMMS and DOOLIN, JJ., dissent.

DOOLIN, Justice, dissenting:

By the enactment of the new Oklahoma Compensation Act, Chapter 234, 1977 Session Law (effective July 1, 1978), the Legislature directed a new era in compensation matters. Among the innovations is a concept of dependency.[1]

It is inferred by the majority opinion that § 3.1 A(1)c of title 85 may be ignored for under 85 O.S.Supp.1977, § 22 no similar reference to § A(1)c has been enacted. There is, of course, some reference to dependency in § 22 [see § 8(a)] but the reference to dependency is not so sharply identified under § 22 as in § 3.1 A(1)c. Actually the majority holds that "with respect to death benefits we are required to look at the schedule of compensation (85 O.S.Supp. 1977, § 22, 8–11)" and since the last mentioned statute omits or makes little provision for dependents receiving one-half (½) or more of the support from a deceased employee, the conclusion is drawn that no benefit is authorized, due or may be paid.

I cannot blind myself to the obvious enlargement and broadening of the "new era" particularly as to classes of persons entitled to enjoy death benefits in the face of a legislative provision as simple and forthright as § 3.1 A(1)c. The mere fact or simply because it is not repeated in the longer administrative § 22 is no reason to ignore the change intended for Workers' Compensation claims. We are reminded that compensation claims are in derogation

---

**20.** *Tisdale v. Wheeler Bros. Grain Co., Inc.,* Okl., 599 P.2d 1104, 1106 [1979]; *Conrad v. State Industrial Commission,* 181 Okl. 324, 73 P.2d 858, 860 [1937]; *State ex rel. Oklahoma Bar Association v. Mason,* Okl., 380 P.2d 961, 964 [1963].

**21.** The issue could have been considered if the aggrieved counsel had raised it in his own timely-filed petition or cross-petition for review. *Conrad v. State Industrial Commission,* supra note 21; *Tisdale v. Wheeler Bros. Grain Co.,* supra note 20; *Ideal Cement Co. v. Buckler,* Okl., 353 P.2d 828, 831 [1960].

A lawyer cannot, on appeal, take more of the client's recovery than was allowed him below unless he has properly placed the client in an adversary posture. No attempt was made to do that here. The lawyer did not more than add— as a specification of error—his *general* claim to a larger fee from *all* the clients and included that in the petition for review *brought by, for and in the name of, Gloria and her two children.* With respect to the fee claim, Shy, from whose recovery a larger sum was to be taken for the lawyer, does not stand here, nor has she ever been properly placed by the paperwork on file, in a posture adversary to that of her lawyer. *Tisdale v. Wheeler Bros. Grain Co.,* supra note 20.

**22.** *Ideal Cement Co. v. Buckler,* supra note 21; *M. & W. Mining Co. v. Lee,* 199 Okl. 76, 182 P.2d 759, 761 [1947].

**1.** 85 O.S.Supp.1977, § 3.1 A(1)c:
"A. In respect to death benefits under the Worker's Compensation Act, the following definitions shall apply:
(1) "Actually dependent" means:
a. . . .
b. . . .
c. any other person dependent in fact upon the employee and refers only to a person who receives one-half (½) or more of his support from the employee;

 . . . .

B. All questions of relationship and dependency shall be determined . . . as of the time of death for purposes of income benefits for death. Amended by Laws 1977, c. 234, § 7, eff. July 1, 1978."

of the common right of action in the courts.[2]

It seems safe to opine that common law rules cannot be used to enforce or defeat a claim under Workers' Compensation Law.[3]

The revisions in the compenation law which went into effect in July 1978 were sweeping and far-reaching. Section 3.1 of 85 O.S.Supp.1977 scrapped persons denied death benefits because they are not "heirs at law." Section 3.1(A)(2) defines a "surviving spouse" as *living with or actually dependent upon the employee.*" There is likewise provided an alternative or qualification for "surviving spouse:" one "living apart for justifiable cause or by reason of desertion by the employee." In today's opinion, the majority conveniently overlooks the definitions and qualifications last set out. Examination of the record and transcript does not show that the lower tribunal considered evidence under today's definitions.

To me, another factor has not been considered by the majority opinion nor by the trial authority, and this is the provision of § B of 85 O.S.Supp.1978, § 3.1 B, which provides:

"All questions of relationship and *dependency* (not just relationship alone) shall be determined ... as of the time of death for purposes of income benefits for death." (Parenthetical phrase supplied; emphasis supplied.)

If § A(2) of 3.1, 85 O.S.Supp.1977,[4] requires consideration of dependency, which I believe it does, the fact the employee furnished only some $60.00 to the ceremonial spouse is evidence of a complete failure to show, on behalf of ceremonial spouse, "actual dependency." Actual dependency is a portion of § 2 to be considered. Section 2 requires the surviving spouse, in order to be eligible for benefits, to be "living with or actually dependent upon the employee." Needless to say, the ceremonial spouse meets neither test.

Admittedly, there is great variance within the compensation acts of the fifty states. I am nonetheless persuaded that an enlightened, broadening and new approach was intended by the Oklahoma Legislature when in 1977 it enacted a new, basic act. As examples of the modern approach to the dependency versus heirs-at-law dichotomy, see *Neureither v. W. Compensation Board,* 15 Cal.App.3d 429, 93 Cal.Rptr. 162 (1971); *West v. Barton-Marlow,* 394 Mich. 334, 230 N.W.2d 545 (1975) and *Russell v. Johnson,* 220 Ind. 649, 46 N.E.2d 219 (1943). In 1952, the Arizona Supreme Court observed in *Hodges v. Industrial Commission,* 73 Ariz. 326, 241 P.2d 431, 432 (1952):

"There are no qualifications attached to the question of dependency. There are not requirements of blood or marital relationship set up to guide the Industrial Commission in its determination of the facts of dependency. It is evident, therefore, that the legislature intended anyone who was *in fact* dependent upon the deceased to be entitled to death benefits under the above quoted section of the code." (Emphasis theirs.)

The Arizona Court had no trouble in awarding death benefits to the second woman even though she could not qualify as the legal widow.

As the Indiana Court opined in a special concurring opinion, found in *Guevara v. Inland Steel,* 120 Ind.App. 47, 88 N.E.2d 398, 404 (1948):

"The Workers' Compensation Act is not a code of morals but is a *practical devise for economic protection of employees and those dependent upon them.* (Emphasis supplied.)

I would reverse the Workers' Compensation Court, vacate its judgment and direct that death benefits be paid to Gloria Tatum, spousal dependent, and to depenent minor children, Shy-Easter, Rosbon and Jacqueline Tatum.

---

2. *Mashburn v. The City of Grandfield,* 142 Okl. 247, 286 P. 789, 791 (1930).

3. *Brooks v. A.A. Davis and Co.,* 124 Okl. 140, 254 P. 66, 70 (1927).

4. "(2) "Surviving spouse" means only the employee's spouse living with *or* actually dependent upon the employee at the time of his injury or death, or living apart for justifiable cause or by reason of desertion by the employee;" (Emphasis supplied.)