Banta v. Banta.

· No. 24,191.

D. O. Banta, *Appellee,* v. Delta A. Banta, *Appellant.*

SYLLABUS. BY THE COURT.

1. Divorce—*Abandonment—Must Have Existed for One Year.* Abandonment, to constitute a ground for divorce, must have existed for one year prior to the commencement of the suit.

2. Same—*What Constitutes Abandonment.* To establish abandonment it is necessary to show cessation from cohabitation for the statutory period, and where the husband is away from home a large portion of the time, and the parties have grown children living in a near-by city and the wife, in accordance with a prearranged plan of the family, including the husband, goes and lives with the children, and the husband visits her at frequent intervals and she returns home at intervals, during all of which times they cohabit together as man and wife, and this practice continues up to within eight months prior to the filing of the petition for divorce, the granting of a divorce to the husband on the grounds of ·abandonment, *held* error.

3. Same—*Insufficient Evidence—Divorce Refused.* The evidence examined and *held* insufficient to warrant the granting of a divorce to either party.

Appeal from Miami district court; Jabez O. Rankin, judge. Opinion filed February 10, 1923. Reversed.

*Frank M. Sheridan,* and *Bernard L. Sheridan,* both of Paola, for the appellant.
*Alpheus Lane,* and *Karl V. Sawyer,* both of Paola, for the appellee.

The opinion of the court was delivered by

Hopkins, J.: The defendant appeals from a judgment of the district court granting her.husband a divorce on the ground of abandonment.

Plaintiff and defendant were married April 14, 1891, and lived together in Miami county until August 10, 1918, when, it is alleged by the husband, the defendant willfully abandoned him.

Three children were born of the marriage—two sons and a daughter. One son was killed in service in France during the World War.

The husband is a speculator in stock, and according to his own testimony, has been absent from home at least two-thirds of the time, covering a period of twenty-five years. A daughter-in-law (wife of the son who died in France) lived with the family from 1914 to 1917.

The plaintiff claimed that the night before his wife went to Kansas City she said she "was going out to make her own living"; that "all she asked was to just turn her loose," that "she had no love for me, and never did have, and that her beauty and pretty form would carry her through the rest of her life, and if I could help it to help myself."

Asked what he said .when his wife stated that she was going to Kansas City, plaintiff stated that he didn't think he said anything, at least, he had no recollection of anything he had said to restrain or persuade her from going. It is apparent that, if there was any intention on the part of the wife to abandon her husband at the time claimed by him, he made no effort to prevent it.

A daughter-in-law, who had resided with the family from her marriage to the son in 1914 to 1917, a short time previous to the alleged abandonment, testified that she had never heard Mrs. Banta use a harsh word toward the plaintiff, but that she had, on frequent occasions, heard plaintiff "quarrel at his wife."

The evidence shows that the defendant was in poor health and grieved a great deal because of the loss of her son, and that her leaving Paola in August, 1918, was according to a prearranged plan of the family.

It appears that, previous to the alleged abandonment, the daughter and daughter-in-law had perfected arrangements to live in Kansas City, Mo., which is not a great distance by rail from Paola where the parties resided. The family occupied a home of nine rooms in Paola; that, because of the absence from home of the husband so great a portion of the time, when she was necessarily left alone, it was agreed between her husband and herself, and concurred in by the other members of the family, that she should go to Kansas City and live with her daughter and daughter-in-law.

The evidence further shows that within three weeks after the defendant went to Kansas City, on the 10th of August, the plaintiff visited her there with the family and occupied the same room with her. It further shows that this continued at frequent intervals every week or ten days, whenever plaintiff was in Kansas City up until a little over one year previous to the filing of the petition in this case. It shows also that on frequent occasions when defendant learned that plaintiff was to be in Paola, she returned there and occupied the same room with him. It shows that the parties had conversations relative to the sale of the home in Paola and the

purchase of a home in Kansas City; that the plaintiff agreed to purchase a home in Kansas City; that he went to look at houses in Kansas City, with some member or members of the family for the purpose and with the view of considering the purchase of a home; that the plaintiff found a purchaser for the Paola home and that the defendant joined in the deed without any other protest than that she thought they might not be satisfied in Kansas City and might want to return to their Paola home, that she made no claim for any part of the proceeds.

Following the sale of the Paola home the defendant continued to return to Paola and meet her husband, and occupied the same room with him as his wife. He procured a small farm near Paola on which he built a barn in which he lived.

The trial in the district court took place December 5, 1921, plaintiff's petition having been filed the first of August preceding. The plaintiff was asked:

"Q. When was the last time that ·Mrs. Banta was down at your place where you are stopping now, to stay all night with you? A. It has been over a year ago.

"Q. How much? A. I could not recall it to memory. About a year, I should judge."

It will readily be seen from plaintiff's own testimony that he lived and cohabited with his wife up to within eight months previous to the filing of the petition in this case.

Four or five days after the filing of plaintiff's petition in Miami county, the defendant, not being apprised of such action, filed a suit for divorce against plaintiff in Wyandotte county. Her claim was that the plaintiff had been urging her to procure a divorce. Both parties had apparently arrived at the stage where they were willing to be divorced.

We do not believe that the evidence produced in this case warrants the granting of a divorce to either party. The marriage institution should not be lightly treated. Courts are reluctant to grant divorces unless the testimony is clear that the party applying is entitled to such a decree.

Where a man and wife have resided together for a period of thirty years and have reared a family which has grown to manhood and womanhood they should not seek a divorce unless on the most substantial ground. Section 7571 of the General Statutes of 1915 provides that "The district court may grant a divorce for any of

the following causes:   .   .   .   Second, Abandonment for one year
.   .   .   ." The evidence shows there was no such abandonment
as is contemplated by the statute on which to base a decree for
divorce, "to establish desertion three things must concur and must
be proved; these are, cessation from cohabitation continued for
the statutory period, intention in the mind of the deserter not to
resume cohabitation, and the absence of the other party's consent
to the separation or misconduct on his or her part justifying the
separation." (9 R. C. L. § 140.)

It is admitted by both parties to this suit that cohabitation be-
tween them continued long after the alleged desertion, and up to
within eight months of the time of the filing of the petition in this
case. We are forced to the conclusion that there was no intention
on the part of the wife to abandon the husband or not to resume co-
habitation.

"It is the well settled general rule that to prove a desertion the separation
must be shown to be against the will and without the consent of the com-
plaining spouse, for a separation with the consent or acquiescence of the parties
does not constitute desertion, no matter how long continued. So,. if a hus-
band, not entirely blameless for the act, makes no effort to prevent his de-
sertion by his wife, and acquiesces in and appears satisfied with its continuance,
he is not entitled to a divorce on the ground of desertion." (9 R. C. L. § 144.)

The record in this case shows that the absence of the wife was not
against the will of the husband; it appears to have been with his
consent and full acquiescence. The plaintiff failed to establish
abandonment for one year, as is required by the statute before the
court would be authorized to render a decree of divorce. The court
has no power to prescribe a shorter period. (*Phelan v. Phelan,*
135 Ill.'445; 25 N. E. 751; 14 Cyc. 641.)

Upon the whole record, we conclude that plaintiff was not en-
titled to a divorce. The judgment is therefore reversed.