No. 32,261

Effie Tisdale, *Appellee*, v. Wilson & Company, *Appellant.*

(43 P. 2d 1064)

Opinion filed May 4, 1935.

*Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder* and *C. C. Keller,* all of Kansas City, for the appellant.

*Russell Field* and *Paul E. Bindley,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This was a compensation case and there are two law points involved in the appeal: (1) Whether the widow of the deceased workman had under the findings of the trial court abandoned her husband, as intended by R. S. 1933 Supp. 44-508, and excluding herself thereunder from being partially dependent; and (2) whether a married woman, a sister of the deceased, in very poor health, who had been largely supported by the deceased for two and one-half years, but had never been a member of his family, and had been separated from her husband for several years but not by divorce—and he a strong, healthy, able-bodied man able to earn wages—is entitled to take as a dependent of her deceased brother under the compensation law.

The sister commenced this action as complainant before the compensation commissioner, and when it came to the hearing and the commissioner learned that there was a widow he ordered that she

be brought in as a party. She was, and was represented by counsel and testified at length in the case. The commissioner found her to be partially dependent and awarded her twenty per cent of the compensation, which was calculated from data furnished by stipulation and amounted to $535.84. The balance of the compensation, if the full amount was allowed, aside from the amount paid the workman in his lifetime, was $2,143.38.

The commissioner, after hearing all the testimony, as usual, stated a history of the case, made findings and awarded the widow $535.84 and denied the claim of the sister as a dependent. From this award and any and all the decisions and findings by the commissioner, the sister appealed to the district court. The widow did not appear before the district court in person or by attorney.

The trial court, after repeating the history given by the commissioner, stated: "The commissioner's statement above is a fair statement of the evidence contained in the transcript so far as stated by him, as the basis of his opinion." The substance of the history so made by the commissioner, and copied by the trial court, is as follows:

"The widow and the deceased were not living together at the time of deceased's accident and death and had not been for more than six months prior thereto. However, there was not an abandonment, and though the widow had earned most of her livelihood, yet the facts show such contribution by the deceased as to warrant a finding of such partial dependency by the widow as to entitle her to twenty (20%) per cent of the amount allotted for total dependency. . . .

"The sister in this case is a married woman whose husband is physically and mentally capable of wage earning. She has, however, been living separate and apart from her husband for a number of years and the testimony here is that her husband abandoned her. This claimant testifies that for more than two years prior to the death of deceased she had been supported by deceased and that she is and has been physically unable to earn a livelihood. She states that about six years prior she worked in a home about a month or two and at the time of deceased's accident she worked at a hotel for about a month and a half, but couldn't hold the job. Claimant was, during the course of the hearing, examined by a doctor who made a report to the commissioner, and to enable the parties to determine if they wished to have claimant examined further and produce further testimony, the commissioner advised that he would conclude from the testimony before him that claimant was an invalid. The parties did not seek to have further testimony produced. This claimant never lived with deceased, though she says she saw him every day, as she cooked and washed for him.

"Is a married sister, whose husband is physically and mentally capable of wage earning but who has deserted her, and who is not living with a brother

although she is being supported by him, to be considered a member of such brother's family so as to be a dependent within the meaning of the Kansas workmen's compensation act?"

The trial judge made further findings of fact in his opinion with reference to the question of abandonment, which are as follows:

"The evidence in the record when briefly stated amounts to this: The deceased, prior to sometime in 1932, was working for the North-Mehornay Company, earning $18 per week, and things were serene between husband and wife; that the deceased in that year lost his job and had not worked up to July 9, 1933; that Dan Terry and his wife were living in Kansas City, Missouri, and with them lived the wife's mother and her daughter and husband; that Blanche Terry, the wife, was working during all of the married life and still is working and earning wages; that shortly prior to July 9, 1933, a son of Dan Terry, living in Texas, wrote to his father that he and his wife and little daughter were coming to Kansas City, and to the same house with his father. Mrs. Terry, without any ado about it, announced to her husband that she was leaving; that she had wanted to get rid of him for about three years; that Dan Terry remonstrated with her, told her she couldn't leave and begged her to stay till Monday; that she declared that she was going and she did go. The husband followed her out into the yard crying and begging her to stay; that she stated that she had already paid rent on an apartment of four rooms where she was going to live; that she returned on the eleventh to get some of the furniture and that while there her husband requested her to see him alone. She replied, 'If you want to see me about coming back, I am not coming back.' The evidence shows further that she departed with some of the furniture and that her husband assisted her in moving; that he went up to help her fix up her apartment and that she claims that he went to her place a few days afterward in an intoxicated condition and disturbed her peace, whereupon she had him arrested, but she did not appear. She says in her testimony that during all of the time since Blanche Terry left her husband, he frequently begged her to come back to him. She testifies that she told him she would come back when he got a place just big enough for the two of them. The evidence shows that when she had him arrested, he had no employment, but that he later obtained employment at Wilson & Company and began giving her or paying for her, small sums of money; that her husband moved from the place where they separated, into another apartment and while there, he had a friend with him who was also working with him at Wilson & Company, by the name of Henry Miles, and that he requested Henry Miles to leave because his wife had promised to come back to him and he wanted the room so his wife could live with him, but that his wife did not return. The evidence further shows that while Dan Terry visited her frequently, she never at any time demanded money from him for support, nor did she offer to let him come and stay in the apartment where she was residing if he would pay the rent or perform any other duties. That she had notice of the accident and injury to her husband, but never visited him while he was in the hospital, which was a period of about seven weeks, nor was she present when he died, but it does show that she was

present at the funeral, nor that she took charge of the body or exercised any rights of a wife in regard to the funeral. That she never made a claim for compensation, but from suggestion of others appeared at the hearing before the commissioner, where she set up claim to partial dependency. It is true that she testified that he visited her frequently; that they talked about living together again; that the separation was mutual until they could locate together, and that he gave her money from time to time, but in weighing this testimony I have in mind that Dan Terry is dead; that these are communications between husband and wife; that there is no one to dispute them; that while in a hearing before the commissioner such evidence is competent and is competent before this court in compensation cases, it is still subject to close scrutiny when it comes to giving weight to it."

The trial court concluded that the widow had voluntarily abandoned the deceased workman and was not a partial dependent and that the sister was a dependent and entitled to the entire amount of compensation, and rendered judgment in her favor for $2,679.22, from which judgment the respondent appealed to this court.

The appellant insists that under the findings of the trial court the widow had not abandoned the deceased workman, as contemplated under the provisions of R. S. 1933 Supp. 44-508. The appellee insists that the question of abandonment is one of fact and not of law, and therefore it is not within the jurisdiction of this court to review it after it has been determined by the trial court, citing in support of that view *Shay v. Hill*, 133 Kan. 157, 299 Pac. 263, and *Meredith v. Seymour Packing Co.*, 141 Kan. 244, 40 P. 2d 325. The contention of the appellee is undoubtedly correct if the question of abandonment is purely a question of fact. The Shay case, above cited, involved the matter of whether or not the deceased was an independent contractor, and the court there said:

"While this court has the same transcript before it the district court had, it is not the province of this court to determine whether the evidence, duly weighed and duly considered in the light of the legal definition of independent contractor, supports one conclusion better than another. The question here is: Was there evidence, whether opposed or not, warranting a reasonable inference, although a contrary inference might reasonably be drawn, to sustain the judgment of the district court." (p. 158.)

And the court concluded that the question of whether the workman was an employee or an independent contractor was purely a question of fact.

*Corpora v. Kansas City Public Service Co.*, 129 Kan. 690, 284 Pac. 818, was where the workman, a few minutes prior to the beginning time, went to register his attendance and then went to a

dressing room and there sustained a fall and injury while putting on his overalls, from which injury and other infirmities he died, and the question was whether or not the injury was incident to the employment. The compensation commissioner found that it was. The district court on the same evidence concluded it was not, and this court on review found that it was incident to the employment, reversing the district court, and it was said on page 693, after speaking of the limitation of jurisdiction in this court to law points only:

"In this case, however, it is not apparent that the district court disagreed with the compensation commissioner on any mere question of fact. While the trial court made a finding that the injury to the workman did not arise out of his employment, that finding was a conclusion correctly or incorrectly deduced from the evidence about which there was no serious controversy." (p. 693.)

The case of *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820, was another case of whether the injury arose in the course of employment, and it was held:

"Under the limited jurisdiction of this court in compensation cases by the enactment of 1929 (R. S. 1931 Supp. 44-556), it remains for this court to determine on review if there was sufficient evidence to support the finding of the district court that the deceased sustained injuries by accident arising out of and in the course of his employment resulting in his death. This is, strictly speaking, a law point and included within it are the two other law questions of whether the injury was an accident, and whether it arose out of and in the course of his employment." (p. 39.)

Surely the question of abandonment under the compensation statute, as well as under any other statute, is a question of law after the facts have been determined, and the question of whether or not there were sufficient facts to sustain the conclusion of the trial court that abandonment had been established is also a question of law.

In the case of *Banta v. Banta*, 112 Kan. 713, 212 Pac. 657, which was a divorce case, it was held:

"To establish abandonment it is necessary to show cessation from cohabitation for the statutory period, and where the husband is away from home a large portion of the time, and the parties have grown children living in a near-by city and the wife, in accordance with a prearranged plan of the family, including the husband, goes and lives with the children, and the husband visits her at frequent intervals and she returns home at intervals, during all of which times they cohabit together as man and wife, and this practice continues up to within eight months prior to the filing of the petition for divorce, the granting of a divorce to the husband on the grounds of abandonment, held error." (Syl. ¶ 2.)

R. S. 1933 Supp. 44-508, which defines "members of a family," and especially as to separation of husband and wife, is as follows:

"In the meaning of this section a widow shall not be regarded as a dependent of a deceased workman or as a member of the family, if she shall have for more than six months willfully or voluntarily deserted or abandoned him prior to the date of his death."

If the statute had used the words "lived separately from him willfully and voluntarily," it might have been simply a question of fact, but when it uses the terms "deserted" and "abandoned" our courts have found it necessary to interpret and define such terms, as was done in the case of *Banta v. Banta.*

Webster's New International Dictionary, 2d ed., defines abandonment as "Desertion by a husband or wife of his or her consort with the intention of creating a permanent separation."

Bouvier's Law Dictionary, 3d ed., defines abandonment as follows:

"By Husband or Wife. The act of a husband or wife who leaves his or her consort willfully, and with an intention of causing perpetual separation."

19 C. J. 56 defines abandonment as used in connection with divorce proceedings as follows:

"Desertion or abandonment consists in the voluntary separation of one spouse from the other for the prescribed time without the latter's consent, without justification, and with the intention of not returning."

Taking the findings of the trial court, including the last sentence copied herein, which discredits some of the testimony of the wife in this case, the evidence, as stated, does not show the intention required in the definition of desertion or abandonment. We therefore conclude that the wife was not, by the evidence found by the trial court, shown to have deserted and abandoned her husband so as to exclude her under the statute from being partially a dependent of his.

This holding may not entitle her to recover compensation, as the matter appears to be moot, as is claimed by the appellee, for the reason that she did not appeal from the order or judgment of the trial court, and the appeal of the respondent would not have the effect of restoring to her the benefit of the award made by the compensation commissioner, but the question of her dependence in whole or in part upon the deceased workman at the time of his death may be proper to be considered in connection with the second question of law here involved.

The second law question involved is the right of the sister of the deceased workman to be his dependent under all the facts found by the trial court. The pertinent part of the statute here involved (R. S. 1933 Supp. 44-508) is as follows:

"'Dependents' means such members of the workman's family as were wholly or in part dependent upon the workman at the time of the accident. 'Members of a family,' for the purpose of this act, means only legal widow or husband, as the case may be, and children; or if no widow, husband or children, then parents or grandparents; or if no parents or grandparents, then grandchildren; or if no grandchildren, then brothers and sisters."

The question under this statute is whether there was sufficient evidence in the findings stated by the trial court to support the conclusion or judgment that this sister, the claimant herein, is a member of the family of the deceased workman and a dependent of his. This is purely a question of law as was stated in *Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70, as follows:

"A judgment in a workmen's compensation case, as in any other case appealed to the supreme court, should be. supported by substantial, competent evidence.

"Whether a judgment is supported by substantial, competent evidence is a question of law, as distinct from a question of fact." (Syl. ¶¶ 2, 3.)

Under the findings the sister is not shown ever to have been a member of the family of the deceased.

Appellee cites the case of *McCormick et al. v. Coal & Coke Co.*, 117 Kan. 686, 232 Pac. 1071, which refers to the matter of determining the relative claims of dependents and the proportion thereof and particularly the degree of dependency, as being said to be questions of fact. But that was not under the present statute as to appeals and reviews in such cases. The parties there involved were the widow and two minor children and the additional question of the remarriage of the widow, and it was held the respondent was not concerned with the question of the apportionment of the compensation among those wholly dependent.

Appellee cites the decision in the case of *Winchester v. Stanton-Wallace Construction Co.*, 124 Kan. 458, 260 Pac. 614, where it was held that the mother of the injured workman, with whom he was living at the time of the injury, was a partial dependent, and the wife was held to have abandoned him, and she and their young daughter were living with her parents, and the daughter was given

sixty per cent and the mother forty per cent of the compensation, which was approved by the court.

The case of *Fennimore v. Coal Co.*, 100 Kan. 372, 164 Pac. 265, is cited, where a minor son was injured and died, and it was held that the parents were dependents under the statute, he being their only son, unmarried and had always lived with them, although the father owned his home and other property and received a regular salary of $125 a month.

It can readily be noticed in the cases above cited the importance and emphasis that is placed upon the fact of being a member of the family. (See, also, *Young v. Shellabarger Mill and Elevator Co.*, 123 Kan. 628, 256 Pac. 992.)

It was said in *Taylor v. Sulzberger & Sons Co.*, 98 Kan. 169, 157 Pac. 435, that—

"It is not the purpose or policy of the statute to continue compensation to a dependent minor after reaching the age of eighteen years unless physically and mentally incapable of earning wages, or to award compensation to an adult married son, the head of a family living separate from that of his mother, who from her wages as an employee made small contributions towards his support, he being physically and mentally capable to earn and actually earning fair wages." (Syl. ¶ 2.)

In the case of *Dunnigan v. Coal Co.*, 115 Kan. 57, 222 Pac. 109, it was held:

"Assuming, without deciding, that a married man, thirty years of age, having a family consisting of a wife, three children and a mother-in-law, and having a household establishment of his own, could because of temporary physical ailments be classified as a dependent member of the family of his single brother who was two years his junior, the trial court committed no error in terminating an award of compensation when such senior brother's temporary ailments and disabilities had ended and when he was restored to full physical capacity to earn wages for himself and family." (Syl.)

And in the opinion it was said:

"It is possible, of course, that an invalid brother could be a dependent member of another brother's family and thus entitled to compensation. But Patrick Dunnigan, deceased, had no family, no dependents of any sort within the meaning of the statute." (p. 60.)

As stated above, the very important feature in the determination of dependency and the sufficiency of the evidence and findings in support of a conclusion of dependency seems to be largely the question of being a member of the family of the injured workman, and we are not convinced that the findings in this case are sufficient to

support a conclusion that this sister, the claimant, although an invalid and had for more than two years received support from her brother, now deceased, was such a member of his family and otherwise found to be situated as to entitle her to be properly classed as a dependent under the provisions of the statute defining such dependency.

The judgment of the trial court is therefore reversed.